Alexander PATTON, Plaintiff-Appellant,

v.

Raymond PRZYBYLSKI, et al.,
Defendants-Appellees.

No. 86–2015.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1987.

Decided June 17, 1987.

---

Karen A. Kerbis, Louis B. Garippo, Ltd., Chicago, Ill., for plaintiff-appellant.

James D. Egan, State's Atty. Office, William D. Fraizer, Illinois Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

Before WOOD, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

Alexander Patton brought suit under 42 U.S.C. § 1983 against the Sheriff of Cook County and three policemen (two of them unknown to Patton), alleging that he had been arrested and jailed in violation of his right under the Fourteenth Amendment to due process of law. The district judge, on the authority of *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), dismissed the complaint for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). We must therefore take as true the facts stated in the complaint; of course, this doesn't mean they are true.

On June 5, 1984, Judge Crilly of the Circuit Court of Cook County, sitting in Chicago, issued a warrant for the arrest of "Alexander Patton," listing his address as 1534 West Marquette Road in Chicago, his race as black, and his date of birth as June 30, 1959. He is, in fact, a different Alexander Patton from the plaintiff. At 11 p.m. on October 31 defendant Raymond Przybylski, an Illinois state policeman, stopped the plaintiff on a highway in Illinois for an alleged traffic violation. Przybylski made a routine on-the-spot check for any warrants outstanding against the driver. The check turned up the warrant for the other Alexander Patton. The plaintiff is also black, but he had a Wisconsin driver's license which listed his residence as Milwaukee and his date of birth as July 27, 1959.

Przybylski arrested the plaintiff (despite his protest that he was the wrong man) and took him to the nearby police station in Schaumburg (a suburb of Chicago), in Cook County. Przybylski refused to take the plaintiff's fingerprints or photograph for comparison with the person sought in the warrant and also made insulting and racially derogatory remarks to the plaintiff. The plaintiff was held overnight in the jail of the police station. Late the next day, Thursday, 14 hours after his arrival at the station, he was taken by defendant John Doe (an unknown Schaumburg policeman) to the Cook County Jail in Chicago, where he was booked by defendant Richard Roe, an unknown Cook County sheriff's deputy. Not till the following Wednesday, November 7, was the plaintiff taken before a judicial officer (Tuesday was election day and the courts were closed)—Judge Crilly, who as soon as he saw him realized it was the wrong Patton and ordered him released.

Patton claims that Przybylski violated his constitutional rights by arresting him and taking him to the Schaumburg police station. He is not specific about what constitutional right of his Przybylski violated, but he is charging constitutional false arrest and the relevant standard is therefore that of the Fourth Amendment. See *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1984); *Olson v. Tyler*, 771 F.2d 277, 280 (7th Cir.1985). The Fourth Amendment forbids unreasonable searches and seizures, and *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), held the Fourth Amendment applicable to the states by virtue of the Fourteenth Amendment. Although an arrest is a deprivation of liberty and could in principle therefore be challenged under the Fourteenth Amendment without reference to the Fourth Amendment, the latter is a more specific regulation of arrests and searches and a plaintiff who cannot make a case under the Fourth Amendment will not be heard if he appeals to the principles of due process instead. "If ... an arrest is upheld when reviewed under the detailed rules that the courts have developed for determining the lawfulness of an arrest under the Fourth Amendment, the arrested person will not succeed in challenging the lawfulness of the arrest by arguing that he should have gotten a hearing before he was arrested, or otherwise by recasting his challenge in the language of due process rather than search and seizure." *McKinney v. George, supra*, 726 F.2d at 1187. See also *Gumz v. Morrissette*, 772 F.2d 1395, 1404–05 (7th Cir.1985) (concurring opinion), and cases cited there. The majority in *Gumz*, it is true, analyzed a claim of excessive force in an arrest as a violation of the due process clause without reference to the standard of the Fourth Amendment. But since the court concluded that there was no violation of the clause, it did not have to decide whether conduct both regulated by the Fourth Amendment and reasonable within the meaning of the Fourth Amendment might nevertheless be held to violate due process. See *id.* at 1399–1400. Another distinction is that a false arrest is squarely within the scope of the Fourth Amendment, while the use of excessive force in making the arrest goes to the manner rather than to the basic propriety of the arrest.

Could Przybylski be found to have acted unreasonably in arresting the plaintiff and taking him to the Schaumburg police station? An affirmative answer is foreclosed not by *Baker*, as the district court thought, but by our decision in *Johnson v. Miller*, 680 F.2d 39 (7th Cir.1982). *Baker* holds that the policeman who executes an apparently valid arrest warrant is not liable merely because probable cause to arrest the person is lacking. The policeman can rely on the warrant—he doesn't have to cross-examine the judicial officer who issued it. In this case, however, the policeman executed the warrant against the wrong person, so *Baker* is distinguishable. But *Johnson* isn't. There a policeman executed the warrant against a different person with the same name. The two persons weren't even of the same race— and the plaintiff was rearrested after being released following the first arrest. Nevertheless we upheld dismissal of the complaint, emphasizing the practical dilemma facing a policeman directed to serve an arrest warrant that appears to designate (if imperfectly) the person whom he must decide whether to arrest. "If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions." 680 F.2d at 41; see also *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir.1985).

The dilemma facing the officer is even more acute in this case than it was in *Johnson v. Miller*. Patton was in an automobile rather than at home; if Przybylski had let him go it might have taken a long time to catch up with him again (if he was the "real" Patton). Had Przybylski studied the read-out on his car computer carefully,

he would have noticed the discrepant address and birth date, but he would also have noticed that not only the name but the race and the year of birth were the same; and the person named in the warrant was a resident of Cook County and the person Przybylski had stopped was driving in Cook County. The "real" Patton might have equipped himself with an out-of-state driver's license; this might be one reason he hadn't been apprehended yet. An added complication is the edginess all policemen feel in confronting a criminal suspect at night on a highway; and Przybylski was alone.

In these confused and ominous circumstances no reasonable finder of facts could, we think, infer that Przybylski acted unreasonably in arresting Patton and transporting him to the Schaumburg police station. No more is necessary to exonerate Przybylski. The Fourth Amendment forbids only unreasonable seizures; the arrest of Patton was not unreasonable. Further support for this conclusion is supplied by *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The police had probable cause to arrest Hill, but mistakenly arrested Miller instead, thinking he was Hill—though he told the officers he was Miller, and he was. The mistaken arrest was "a reasonable response to the situation facing them at the time," *id.* at 804, so the Fourth Amendment was satisfied. For cases applying this principle in circumstances similar to those of the present case see (besides *Johnson v. Miller* and *Arnsberg v. United States*, both cited earlier) *Gero v. Henault*, 740 F.2d 78, 84–85 (1st Cir.1984); *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir.1984); *United States v. Glover*, 725 F.2d 120, 122 (D.C.Cir.1984).

▪ Although the complaint alleges that Przybylski caused Patton to remain in the Schaumburg police station for 14 hours, this allegation is not believable, and therefore cannot defeat the motion to dismiss the complaint; Przybylski, a state policeman, had no authority over the Schaumburg police department. Anyway a 14-hour delay in bringing Patton before a magistrate would not have violated his constitutional rights (*Baker* is squarely on point here), and there is no suggestion that Przybylski continued to exercise a baleful influence over Patton's destiny after Patton was taken off to Cook County jail. If Przybylski made racially derogatory remarks to Patton, this was unprofessional and inexcusable, but Patton does not allege that such remarks would violate his civil rights. Cf. *Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1380–81 (7th Cir.1986) (Title VII and section 1981). Defamation is not a deprivation of liberty within the meaning of the due process clause. See *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987). No more is a derogatory racial epithet.

The next issue is the length of time that Patton was held in the Cook County jail before being taken before Judge Crilly and released. The district court thought that any claim of unduly protracted detention was foreclosed by the *Baker* case, which he read as having held that an 8–day detention does not violate the due process clause. We do not read *Baker* that way. It is true that the total period of detention was 8 days, but 5 of these were spent in another county, whose officials were not defendants. So the Court (at least the majority, and that's all that matters) treated the relevant period as only 3 days, all on a 3–day weekend. Setting to one side the 14 hours in Schaumburg, whose jail is not under the control of the Cook County sheriff, the weekend, and election day (as equivalent to New Year's day, the holiday that extended the weekend in *Baker*), there are still 2 complete weekdays during which Patton was in jail without being brought before a judicial officer.

An innocent person was allowed to languish in jail for almost a week; and to arrest a person over his vigorous protest that he is the wrong man—a protest given some credibility in this case by the driver's license—and keep him in jail for this period without either investigating the case or bringing him before a magistrate raises serious constitutional questions, under the Fourth Amendment if the arrest was im-

proper or under the due process clause if the arrest was proper and the complaint is that the arrested person, having been deprived of his liberty by being incarcerated, was denied due process. See, e.g., *Gerstein v. Pugh*, 420 U.S. 103, 112–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975); *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1143–44 (7th Cir.1987); *Llaguno v. Mingey*, 763 F.2d 1560, 1567–68, 1570 (7th Cir.1985) (en banc); *Coleman v. Frantz*, 754 F.2d 719, 723–25 (7th Cir.1985). *Baker v. McCollan* is not to the contrary. See 443 U.S. at 144–45, 99 S.Ct. at 2694–95.

 The problem in this case is that the complaint fails to connect these problems with Sheriff Elrod. Section 1983 does not permit a suit based on a theory of superiors' liability. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir.1984). Patton must find out who was actually responsible for the delay in bringing him before Judge Crilly or some other magistrate, and sue that person, and he hasn't done this. Obviously the booking officer at the Cook County jail (defendant Richard Roe) was not the responsible person; nor was defendant John Doe, the Schaumburg policeman who transported Patton to the Cook County jail; and there is no suggestion that Sheriff Elrod knew anything about the case.

The only pertinent allegation in the complaint is that "it was and is the custom, practice and policy of the defendants to hold, detain and incarcerate persons arrested on outstanding warrants without immediately or as soon as reasonably possible taking them before a magistrate." This boilerplate falls far short of alleging Elrod's personal involvement in the protracted detention of the plaintiff. Mindful of the high incidence of unmeritorious civil rights suits, the absence from federal civil rights law of a doctrine of superiors' liability, and the burdens that having to defend incessant litigation places on public officials in today's litigious climate, the courts insist that plaintiffs who want to bring a head of department into a federal civil rights case plead his involvement with greater specificity than Patton has done.

See, e.g., *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985).

Affirmed.

RIPPLE, Circuit Judge, dissenting.

This case is before the court solely on the allegations of the complaint. According to that document, a black man from another state, "lawfully operating his automobile" on an interstate highway at night, was stopped by an Illinois State Police officer. The officer, according to the complaint, "verbally assaulted and abused plaintiff Patton and made insulting and derogatory racial remarks." The complaint continues to allege that Mr. Patton was arrested because of an outstanding warrant for the arrest of an "Alexander Patton" in Cook County. Despite Mr. Patton's constant protestations that he was a different "Alexander Patton" and despite obvious discrepancies between the data on the arrest warrant and the data on Mr. Patton's license and registration, Mr. Patton was arrested and held by Illinois authorities for *eight days* before he was taken before a magistrate. According to the complaint, those eight days were somewhat more than just an unpleasant hiatus in Mr. Patton's life. He alleges that he was beaten severely by the inmates of Cook County jail. *Cf. Rascon v. Hardiman*, 803 F.2d 269 (7th Cir.1986) (section 1983 suit brought against corrections officials for the fatal beating of a pre-trial detainee). He also alleges that he lost his job.

The court quite correctly notes that the allegations set forth in this complaint present quite a different situation than that presented to the Supreme Court of the United States in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Here, the person arrested was not the person named in the warrant. Nor, according to the allegations of this complaint, was this a mere "detention of three days over a New Year's weekend...." *Id.* at 145, 99 S.Ct. at 2695. Certainly, *Johnson v. Miller*, 680 F.2d 39 (7th Cir.1982), involving a negligent bureaucratic foul-up, is hardly controlling precedent for a case in which the complaint alleges willful malfea-

sance, perhaps racially-based, on the part of state officials which resulted in an *eight day incarceration* before the citizen was brought before a magistrate.

A single principle of law should control the disposition of this case:

At this stage of the litigation, we must accept petitioner's allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The decision to dismiss a complaint "is not a decision for the district court to make lightly." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). The district court "must accept the well-pleaded allegations of the complaint as true. In addition, the court must view these allegations in the light most favorable to the plaintiff." *Id.*

We must take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiffs.... A complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle the plaintiff to relief.... A plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action....

*Doe v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411, 414 (7th Cir.1986) (citations omitted); *see also Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985).

Despite these well-settled principles, the majority—with only the complaint before it—determines the reasonableness of the particular arresting officer's conduct, the credibility of the allegation that the arresting officer caused the plaintiff's further detention, and the reasonableness of the conduct of the officers who held the plaintiff for *eight days* without justifying their actions to a magistrate. It dismisses, by pure *ipse dixit,* the complaint's allegation that this lengthy detention was part of a "custom, practice and policy," of the Cook County Sheriff's Office. Further proceedings may well establish that the plaintiff cannot maintain this cause of action. Perhaps there was no willful violation of his federal rights, no racial animus, no federally-forbidden pattern, practice or policy. Perhaps the same procedures would have been followed if a Northbrook housewife had been traveling on that road that night. Perhaps.

When legal historians encounter this case in the pages of the *Federal Reporter,* the facts alleged in the complaint will no doubt remind them—as they should remind us—of an earlier period in American history when such occurrences were quite frequent. Indeed, it was to correct such abuses, taken "under the color of state law," that the statute upon which this action is predicated was enacted. The practice of casting state tort law claims as federal civil rights actions is indeed a pernicious one. *See, e.g., Jackson v. City of Joliet,* 715 F.2d 1200, 1203–06 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984). This court has enjoyed a good deal of success in curtailing that practice. *See, e.g., Kompare v. Stein,* 801 F.2d 883, 888 (7th Cir.1986); *Sudeikis v. Chicago Transit Auth.,* 774 F.2d 766, 770 (7th Cir. 1985). However, we do not serve that cause well when we act precipitously and uncritically. If we permit such a judicial methodology to become commonplace (and this case will certainly encourage such a trend), we risk blinding ourselves to the valid civil rights complaint—a situation incompatible with the role assigned us by the Constitution and, through statutory implementation, by the Congress.