**Andrew WILSON, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 86 C 2360.**

United States District Court,
N.D. Illinois, E.D.

May 2, 1988.

John L. Stainthorp, People's Law Office, Chicago, Ill., for plaintiff.

James P. McCarthy, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Andrew Wilson brings this 42 U.S.C. § 1983 action against numerous City of Chicago Police Officers ("the police officers") as well as the Superintendent of Police, Richard Brzeczek ("Brzeczek"), and the City of Chicago ("Chicago"). He claims that the defendants violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments when, acting pursuant to established city policy, the police officers detained and brutalized him after arresting him for allegedly murdering two Chicago police officers. Brzeczek and Chicago have moved to dismiss the complaint insofar as it seeks to hold them responsible for the actions of the police officers. For the reasons set forth below, the motion is denied.

## FACTS

Plaintiff alleges that following his arrest in the early morning of February 14, 1982, for the alleged murder of two Chicago police officers, he was transported to a police station on the south side of Chicago and, once there, was tortured with a barrage of punches, kicks, burns, and electrical shocks. He claims that he was kept at the police station throughout the day and into the evening of February 14, and that he was then transported to a hospital where he was subjected to further threats and mistreatment by the police. He claims that he was not taken before a magistrate or other judicial officer at any time that day.[1]

---

1. Although plaintiff does not indicate ir his complaint whether or not he was arrested pursuant to an arrest warrant, he does state in his memorandum in opposition to the motion to dismiss that the arrest was executed pursuant to an arrest warrant.

Plaintiff claims that the delay in taking him before a magistrate and that the physical abuse he endured were part of a custom or policy of the Chicago Police Department to isolate, interrogate and in some cases physically abuse suspects before lawyers could be appointed for them. This 'policy or custom,' plaintiff claims, was "followed in practically every felony arrest that occurred in Chicago in 1982." Complaint ¶ 39.

Plaintiff further claims that the inhumane treatment visited upon him, though not necessarily practiced in every felony arrest, was part of a custom and policy of the Chicago Police Department whenever individuals were arrested for allegedly injuring or killing Chicago police officers. *See* Complaint ¶¶ 42–43.

Plaintiff next alleges that Brzeczek was responsible for "formulating, implementing, and administering the policies, practices and customs of the police department," Complaint ¶ 4, that he knew and approved of the policies which resulted in the mistreatment, and that he specifically ratified the police officers' treatment of plaintiff after he became aware of it. Indeed, plaintiff alleges, Brzeczek took no disciplinary action against the police officers involved "despite judicial findings that this torture did occur." Complaint ¶ 43.

Chicago and Brzeczek have moved to dismiss count III of the complaint—the only count in which they are named—on the grounds that plaintiff has failed to allege sufficient facts to support his claims against the city as a municipality, or against Brzeczek as a supervisory official. More specifically, Chicago maintains that "[a]lthough Wilson has alleged a policy exists, he has pleaded no facts supporting that claim." Meanwhile, Brzeczek insists that plaintiff "does not allege Brzeczek created the alleged policy, nor that he ordered the alleged acts of the other defendants or knew of those actions and failed to intervene."

## DISCUSSION

### Brzeczek's Capacity

 Before turning to the arguments raised by Chicago and Brzeczek, this court notes that neither plaintiff nor the defendants have discussed whether Brzeczek is sued in his personal or in his official capacity. The failure to do so is disturbing, since, as the Supreme Court and Seventh Circuit have repeatedly noted, the capacity in which a government official is sued is an important factor in determining the legal standards which will govern his ultimate liability. *E.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Archie v. City of Racine,* 826 F.2d 480, 486 n. 4 (7th Cir.1987). A plaintiff should indicate at the outset of his lawsuit the capacity in which he seeks to hold the defendants liable, so that the defendants, and the court, can apply the appropriate law.

When a plaintiff fails to indicate the capacity in which he is suing a public official, the court presumes that the "official has been sued in his official capacity and only in that capacity." *Archie v. City of Racine,* 826 F.2d at 486 n. 4; *Shockley v. Jones,* 823 F.2d 1068, 1071 (7th Cir.1987). This presumption is rebuttable, however, so that if the course of the proceedings indicates that plaintiff seeks recovery against the official in his personal capacity, his failure to so indicate in his pleadings will not be fatal to his personal-capacity claim. *Shockley v. Jones,* 823 F.2d at 1071.

In this case, although the pleadings do not indicate whether plaintiff is suing Brzeczek in his official capacity as the Superintendent of Police, or rather in his personal capacity for his actions when he held that position, a number of factors suggest to this court that plaintiff seeks to hold Brzeczek personally liable for his actions.

First, the heading of the complaint names Brzeczek without reference to his position as Superintendent of Police. Second, in his application to proceed *in forma pauperis,* plaintiff describes Brzeczek as having *formerly* been employed with the Chicago Police Department. Third, plaintiff names Chicago as a co-defendant with Brzeczek, which would be a redundancy if the claim against Brzeczek were in his offi-

cial capacity. *See Archie v. City of Racine,* 826 F.2d at 486 n. 4 ("Official-capacity suits are merely another way of pleading municipal liability...."). Finally, Brzeczek's motion to dismiss applies the legal rules applicable to personal capacity suits, and plaintiff responds to these arguments without any indication that Brzeczek has misconstrued the nature of the claims.

Accordingly, this court will proceed on the assumption that plaintiff's claims against Brzeczek seek to hold him personally liable. Nevertheless, plaintiff should quickly amend his complaint to remove the ambiguity he has created.

*The Claim Against Chicago*

■ Chicago has moved to dismiss on the grounds that the complaint fails to set forth facts sufficient to hold it responsible for the allegedly unlawful acts of the police officers. It points to Seventh Circuit decisions indicating that, notwithstanding the liberal pleading requirements of the Federal Rules, a plaintiff must do more than merely allege the existence of a 'custom or policy' in order to state a claim for municipal liability pursuant to *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987); *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985).

Yet, the instant case differs markedly from *Patton* and *Strauss.* In those cases, the plaintiffs did nothing more than allege that a custom or policy existed; they set forth *no* facts to support those legal conclusions. *See Patton v. Przybylski,* 822 F.2d at 701; *Strauss v. City of Chicago,* 760 F.2d at 769.

In this case, by contrast, the plaintiff specifically alleges that his extended and abusive detention was part of a custom or policy that the Chicago police "followed in practically every felony arrest that occurred in Chicago in 1982." Complaint ¶ 39. Such an allegation suffices to meet the requirements for pleading a 'custom or policy' under the Federal Rules. *See Strauss v. City of Chicago,* 760 F.2d at 769 ("We do not mean to imply that a plaintiff must plead in great[ ] detail, but merely that the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injury."); *Hossman v. Blunk,* 784 F.2d 793 (7th Cir.1986); *Jackson v. Elrod,* 655 F.Supp. 1130 (N.D.Ill.1987); Bandes, *Monell, Parrat, Daniels and Davidson: Distinguishing a Custom or Policy From a Random, Unauthorized Act,* 72 Iowa L.R. 101, 151 ("If a practice by state officials becomes so widespread as to be permanent and well settled, it is considered to have the force of law, although not authorized by written law."), *cited with approval, Wilson v. Civil Town of Clayton,* 839 F.2d 375, 380–81 (7th Cir. 1988).

*The Claim Against Brzeczek*

■ Brzeczek seeks dismissal of the claim against him in his personal capacity on the grounds that he cannot be held personally liable for the acts of his subordinate officers which he did not specifically authorize, either through a direct order or, at least through his knowledge and consent. Plaintiff seeks support for his argument from the Seventh Circuit's decision in *Crowder v. Lash,* 687 F.2d 996 (7th Cir. 1982), in which the Court stated that "a[ ] [supervisory] official satisfies the personal responsibility requirement of § 1983 [only] if she acts or fails to act with deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at her direction or with her knowledge and consent." *Id.* at 1005, *followed, Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985).

■ Although one could read this statement as requiring the official's personal knowledge of the particular incident giving rise to § 1983 liability, such a reading is inconsistent with other Seventh Circuit decisions. *See, e.g., Rascon v. Hardiman,* 803 F.2d 269 (7th Cir.1986) (executive director of Department of Corrections could be personally liable for unconstitutional policy at county jail if he "recklessly caused the alleged deprivations by his action or failure to act"); *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1391 (7th Cir. 1984) (chief of police could be held liable for failing to properly supervise or train his subordinates where this failure caused the resulting unconstitutional acts). Like the

municipality itself, a policy-maker within the municipality cannot be held liable on a theory of respondeat superior. *Wilson v. Civil Town of Clayton,* at 382, 383–84. However, where a municipality may be held liable for the knowing acquiescence of one of its policy-makers in an unconstitutional policy of his municipal employees, surely the policy-maker himself can be held personally accountable for his actions. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (suggesting that liability of official sued in his personal capacity is *broader* than liability of official sued in his official capacity); *Rascon v. Hardiman,* 803 F.2d at 275 (upholding claims against executive director of Department of Corrections in both his individual and personal capacities).

In this case, plaintiff claims that Brzeczek knew of the policy whereby suspected felons were unlawfully detained and subjected to physical abuse and approved of this activity. Plaintiff further alleges that, even after Brzeczek learned of the police officers' abuse of plaintiff, he took no action against them. These allegations, if true, would suffice to render Brzeczek personally liable for causing the alleged unconstitutional treatment plaintiff suffered.

## CONCLUSION

Defendants' Motion to Dismiss Count III of the Complaint is denied.