Daniel PANFIL, Plaintiff–Appellant,

v.

CITY OF CHICAGO, et al., Defendants–Appellees.

No. 01–3150.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 2002.

Decided Aug. 28, 2002.

Before POSNER, MANION, and DIANE P. WOOD, Circuit Judges.

## ORDER

Daniel Panfil was mistakenly arrested on December 24, 1999, pursuant to a warrant issued for Dale Panfil, his identical twin brother. Despite his protests, Daniel Panfil was taken to the Cook County Jail and later transferred to the McHenry County Jail. Eventually an investigation by the jail officials and the Public Defender's office revealed the misidentification and he was released on December 30, 1999. Subsequently Daniel Panfil filed a complaint against the arresting officer, the City of Chicago, the McHenry County Jail and its Sheriff, alleging Fifth Amendment and civil rights violations under 42 U.S.C. § 1983, as well as state claims for wrongful arrest and detention. The district court dismissed his claims, as well as his subsequent motion to amend. Panfil appeals and we affirm.

## Background

Daniel Panfil was arrested on December 24, 1999, by Chicago Police Officer Gerald Cisela, pursuant to a warrant issued by McHenry County in 1999 for Daniel's identical twin brother, Dale Panfil. The warrant was issued after Dale Panfil failed to appear in court on charges of: 1) driving on a revoked license; 2) operating a motor vehicle with a suspended registration; and 3) operating a motor vehicle without insurance. Because Daniel and Dale Panfil are identical twins, Daniel matched the physical description and exact age of the individual named in the arrest warrant, although the first names were slightly different. At the time of his arrest, Panfil informed Officer Cisela that he was not the person named in the warrant and showed him an Illinois driver's license bearing the name Daniel Panfil. Panfil's father, who was also present at the scene of the arrest, told Officer Cisela that the Daniel was not his twin brother Dale. Cisela arrested Panfil despite these protests.

Subsequent to his arrest, Panfil was processed at the Chicago Police Department's Jefferson Park Station and then transported to the Cook County Jail. Although Panfil claimed he was not the person named in the warrant, the personnel at the jail did not try to verify his identity. On December 26, 1999, Panfil was transferred to the McHenry County Jail, and the next morning he was taken before a magistrate where he entered a plea of not guilty and moved for his release. Three days later, on December 30, 1999, Panfil was released by order of a judge after an investigation by the Public Defender's office and McHenry County Jail employees.

Almost a year later, Panfil filed a complaint with the United States District Court for the Northern District of Illinois against Officer Cisela, the City of Chicago, and the McHenry County Jail under 42 U.S.C. § 1983, alleging violations of his Fifth Amendment right to be free from deprivation of liberty without due process of law, his constitutional right to be free

from unreasonable seizure, as well as state claims for wrongful arrest and detention. Panfil later amended his claim to include Kenneth Nygren, who is the Sheriff of McHenry County. In May 1999, the district court dismissed all of Panfil's constitutional claims in his amended complaint without prejudice, with one exception, and declined to retain jurisdiction over his state law claims. The district court dismissed Panfil's Fifth Amendment claim with prejudice. In dismissing his claims, the district court construed his complaint to state a due process violation under the Fourteenth Amendment. The court found that Panfil had not stated a due process claim for deprivation of liberty against Officer Cisela because he had not shown the absence of adequate state remedies. The district court also found that Panfil had failed to state a claim for municipal liability in his causes of action because he had not alleged a specific municipal policy, custom, or practice that led to his detention, and that his detention did not violate his rights as it was reasonably based on a valid warrant. Panfil then moved to file a second amended complaint to include a claim alleging that his rights were violated due to a municipal policy. On July 20, 1999, the district court denied his motion stating that the amendment would be futile because Panfil had not alleged an underlying constitutional violation. On August 15, 2001, Panfil appealed both the orders dismissing his claims as well as the denial of his motion to file a second amended complaint.[1]

## Analysis

On appeal, Panfil argues that the district court erred in dismissing his claims under the Fourteenth Amendment because his complaint alleged that he was wrongfully arrested and detained and that, therefore, the City, Officer Cisela, the McHenry County Jail and Sheriff Nygren denied him his right to be free from unreasonable seizure and deprived him of his liberty without due process of law. Panfil argues that the district court erred by requiring him to meet a heightened pleading standard. He claims that his complaint for relief satisfied the requirements of F.R.C.P. 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief...." Because he alleged constitutional injuries that were caused by someone acting under state law and he attempted to amend his complaint to tie these injuries to a municipal policy, he maintains that his complaint was sufficient.

We review a motion to dismiss de novo. *See Tobin for Governor v. Illinois State*

---

1. McHenry County argues that Panfil failed to timely appeal the underlying dismissal of his claims because his claims were dismissed in May and he did not file his appeal until August. Fed. R.App. P. 4(a)(1)(A) (requiring a notice of appeal to be filed within 30 days after the judgment or order appealed is entered). Therefore, they argue, the only issue that Panfil has preserved for appeal is the denial of his motion to file a second amended complaint in July. However, the district court dismissed the majority of Panfil's claims on May 23 and 25 without prejudice, and when a claim is dismissed without prejudice it is generally not considered a final and appealable judgment. *See, e.g., Larkin v. Galloway,* 266

F.3d 718, 721 (7th Cir.2001); *Brill v. McDonald's Corp.,* 28 F.3d 633, 634 (7th Cir. 1994). The dismissal of Panfil's complaint did not become final until it was clear that Panfil's could not amend his complaint in such a manner that would permit his case to proceed. *See, e.g., Larkin,* 266 F.3d at 721; *Furnace v. Board of Trustees,* 218 F.3d 666, 670 (7th Cir.2000). In this case, the district court's denial of Panfil's motion to amend his complaint because of futility finalized the dismissal of his complaint for the purposes of appeal. Because he filed his appeal within 30 days of that order, he has preserved the issue of the dismissal of his complaint for appellate review.

*Board of Elections,* 268 F.3d 517, 521 (7th Cir.2001). We will affirm a district court's decision to dismiss a complaint "if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle [him] to relief." *Id.* On appeal from the dismissal of a complaint, we accept all of the well-pleaded factual allegations in the complaint, *id.,* "without, of course, vouching for their truth." *Albright v. Oliver,* 975 F.2d 343, 344 (7th Cir.1992), *aff'd,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

■■■ To state a claim under § 1983, a plaintiff must prove that (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). First we address Panfil's allegations that he was deprived of his right to be free from unreasonable seizure. *See* U.S. Const. Amend. IV. In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court stated that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested...." *Id.* at 396, 109 S.Ct. 1865 (citation omitted). As we further explained in *United States v. Marshall,* 79 F.3d 68 (7th Cir.1996), "[i]n circumstances where the police mistake a person for someone else they seek to validly arrest [on a warrant], the arrest is constitutional if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought." *Id.* at 69 (citation omitted). Here, Panfil was arrested pursuant to a valid warrant for his identi-

cal twin brother Dale Panfil, based on his brother's failure to appear in court on traffic violations. Daniel Panfil matched every physical characteristic of the individual named in the warrant, save a slight difference in the name, down to the date of birth. Because suspects often use an alias, *see Hill v. California,* 401 U.S. 797, 803, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), it was reasonable for the officer to believe that the person named in the warrant was in fact Daniel Panfil. *See, e.g., Brown v. Patterson,* 823 F.2d 167, 169 (7th Cir.1987) (listing additional cases in support of this conclusion). It was also reasonable for Officer Cisela to arrest Daniel despite his father's statements concerning Panfil's identity because of their relationship. Under these circumstances, Panfil cannot maintain a § 1983 claim based on the Fourth Amendment because his arrest was based on a valid warrant supported by probable cause, and it was reasonable for Officer Cisela to believe that Daniel was the person named in the warrant. *See also Johnson v. Miller,* 680 F.2d 39, 41 (7th Cir.1982) ("If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions.").

■■■ Panfil next claims that the district court erred in dismissing his due process claim under the Fourteenth Amendment. In his complaint he alleged that by detaining him in jail – for two days by the City of Chicago and four days by McHenry County – after his mistaken arrest, the defendants violated his due process rights. Claims that are based on the continued

detention of individuals after they have been arrested on a valid warrant are governed by the Due Process Clause. *See Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987); *see also Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) (noting "at some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the due process clause."). Panfil claims that he should have been fingerprinted while in custody and had his prints compared to his twin brother's fingerprints, thereby proving his identity. Because he was not fingerprinted, Panfil contends that he was deprived of his liberty without due process of law.

In determining whether these facts suffice to state a due process claim we look first to the Supreme Court's decision in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In *Baker,* an arrest warrant intended for the plaintiff's brother, Leonard McCollan, was issued in the name of Linnie McCollan, because Leonard had been using Linnie's name and a copy of his driver's license. *See* 443 U.S. at 140–41, 99 S.Ct. 2689. Linnie McCollan, the plaintiff, was arrested despite his claims that he was not the person sought by the police and was held in custody over the New Year's holiday from December 30, 1972 until January 2, 1973. *See id.* at 141, 99 S.Ct. 2689. He was released after county officials compared his appearance to file photos of Leonard McCollan. *Id.* The Court noted that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted–indeed, for every suspect released." *Id.* at 145, 99 S.Ct. 2689. In that case, the Court held that there was no Due Process violation because McCollan was arrested pursuant to a valid warrant. The Court noted that there was a limit, of course, to the mistaken detainment of an individual:

> Obviously, one in [plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment.... We may even assume, arguendo, that depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of the law."

*Id.* at 144–45, 99 S.Ct. 2689.

In this case, Panfil's claim against Officer Cisela and the City of Chicago based on his detention at the Cook County Jail for three days is squarely precluded by *Baker* because his case is almost identical to the scenario resolved by the Court in that case. The Court noted in respect to a claim against the arresting officer that "[g]iven the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145–46, 99 S.Ct. 2689. Additionally, with respect to municipal liability the Court stated "[n]or is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim." *Id.* at 146, 99 S.Ct. 2689. Panfil was arrested pursuant to a valid warrant, and released (albeit to another county) two days later. Nor is there any allegation that Cook County continued to exercise

influence over Panfil once he was transferred to McHenry County. Under *Baker*, these two days of wrongful detention do not rise to a Due Process violation when Panfil was arrested pursuant to a valid warrant.

■ However, Panfil's claim against McHenry County and Sheriff Nygren bears a closer look.[2] After Panfil's transfer to McHenry County on December 26, he had a hearing before a magistrate on December 27, where he protested his innocence. He was eventually released three days later, on December 30, after an investigation by county personnel and the Public Defender's office. In interpreting *Baker*, the Seventh Circuit has indicated that jailing a person for a period of time over his vigorous protest that he is the wrong person, without investigating or bringing him before a magistrate, can raise "serious constitutional questions ... under the due process clause if the arrest was proper and the complaint is that the arrested person, having been deprived of his liberty by being incarcerated, was denied due process." *Patton*, 822 F.2d at 700. *See also Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir.1987) (detention of wrong individual for twenty-four hours did not amount to a deprivation of liberty without due process in violation of the Fourteenth Amendment); *Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir.1985) (where a plaintiff was detained pursuant to a valid warrant for 18 days despite his protests of innocence, "*Baker [v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433]supports, if not requires, our conclusion that plaintiff's 18-day detention was a violation of liberty without due process of law.") *receded from*

on other grounds by *Benson v. Allphin*, 786 F.2d 268, 279 (7th Cir.1986). In this case, however, Panfil did not suffer a constitutional deprivation despite his confinement because he was confined for only four days, which is fewer than any of the time periods in our past case law, and he was afforded due process. Specifically, Panfil was brought before a magistrate on the day after his transfer where he had an opportunity to protest his innocence. Additionally, the County jail personnel themselves, in combination with the Public Defender's office, conducted the investigation that revealed Panfil's innocence and led to his release. Accordingly, Panfil cannot state a due process claim against Sheriff Nygren or McHenry County.

■ Finally we turn to Panfil's appeal of the district court's denial of his motion to file a second amended complaint. This court reviews the district court's decision to deny a motion for leave to file an amended complaint for abuse of discretion. *See, e.g., Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir.2001). "Although leave to amend a complaint should be freely granted when justice so requires, *see* Fed. R.Civ.P. 15(a), the district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Id.* at 860–61. Panfil sought to amend his complaint to allege that the jail system's failure to fingerprint him indicates a municipal policy that led to his confinement.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56

---

**2.** McHenry County argues that Sheriff Nygren is a County officer and not a County employee, *see Moy v. County of Cook*, 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926 (1994), and therefore the County cannot be held responsible for either the actions or inactions of the

Sheriff. Because Panfil cannot state a claim that alleges the denial of a constitutional right regardless of the Sheriff's relationship with the County, we need not resolve this issue in this order.

L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of *respondeat superior,* liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018. Courts have recognized three ways in which a municipality's policy can violate an individual's civil rights under § 1983:(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See Baxter v. Vigo County School Corp.,* 26 F.3d 728, 734–35 (7th Cir.1994). Panfil cannot satisfy any prong of this analysis because he cannot demonstrate that his constitutional rights were deprived by his arrest on a valid warrant and subsequent detention. Even so he alleges that the policy itself, of not fingerprinting and comparing prints of arrested individuals for identification purposes, is unconstitutional as it could lead to improper detentions. However, while it may have been a positive effort to attempt to perform fingerprint comparison in Panfil's case, even though he did not allege that either municipality had his brother's fingerprints on record, it is not constitutionally required. *See Patterson v. New York,* 432 U.S. 197, 208, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.")

In *Baker,* the Court noted that the county could have determined earlier that it was detaining the wrong brother if it had compared his fingerprints with those of the man sought in the warrant, *see Baker,* 443 U.S. at 142, 99 S.Ct. 2689, but held that it was not a due process violation to hold someone in jail even though such a comparison had not been performed. *Id.* at 145–46, 99 S.Ct. 2689. Similarly, in *Patton,* this court noted that it was not a due process violation when the arresting officer refused to take Patton's fingerprints to compare them with those of the person sought in the warrant. *See* 822 F.2d at 698. Thus, while Panfil argues that public policy favors the use of immediate fingerprint comparisons, precedent makes clear that such a program is not constitutionally required. Therefore, Panfil cannot succeed even had he been allowed to amend his complaint and the district court did not abuse its discretion in denying the amendment based on futility.

For the foregoing reasons the decision of the district court is affirmed.