HAMILTON, Circuit Judge,
concurring in part and concurring in the judgment.
I join the majority opinion in affirming the dismissal of Atkins’ claims regarding his arrest and the conditions of his detention. I would resolve differently, however, *833 Atkins’ due process claim against the individual state officials. In my view, Atkins alleged sufficiently that he was deprived of liberty without due process of law when he was held by the state for more than 48 hours without a hearing before a judge. He was entitled to a hearing in which he could have shown that he was not the same William Atkins sought on the parole violation warrant or, if perhaps he was indeed the William Atkins sought (we cannot tell from the sparse record), that he was no longer on parole at the time of the alleged violation. I agree with my colleagues, however, that the individual defendants are entitled to qualified immunity on that claim because the law was not and still is not sufficiently clear to impose individual liability under 42 U.S.C. § 1983. I therefore concur in the judgment to affirm dismissal of the claim.
This case has been unnecessarily challenging because, as my colleagues point out, the attorney for the late Mr. Atkins has buried one solid claim in a crowd of hopeless claims against virtually every potential defendant in sight. The suggestion, for example, that every prison or jail employee risks personal liability if he does not investigate an inmate’s claim of innocence is beyond frivolous. Despite these distractions, there is a real and serious due process problem in the possibility for mistaken identifications under parole violation warrants.
The problem is this. Law-abiding persons often have encounters with police officers during which they provide basic identifying information. The police are free to check this information against any outstanding warrants, including those for parole violations. Suppose that, during that check, the police come across a warrant bearing the same name and some other identifying information. Even if the identifying information does not match perfectly, as it did not in Atkins’ case, the police officers on the scene may reasonably arrest the person over his protests that he is a different person.
So far, none of this is controversial, but we know that mistakes are made in such arrests. What process is due to the person who claims he has been wrongly identified? Typically, a person arrested without a warrant from a magistrate is entitled to (1) a hearing (2) before a judicial officer where a wrong identification could be addressed (3) “promptly after arrest.” See Gerstein v. Pugh, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Under this promptness standard, “judicial determinations of probable cause within 48 hours of arrest will, as a general matter,” suffice unless the prisoner can prove unreasonable delay. County of Riverside v. McLaughlin, 500 U.S. 44, 56-57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); but see id. at 71, 111 S.Ct. 1661 (Scalia, J., dissenting) (“Hereafter a law-abiding citizen wrongfully arrested may be compelled to await the grace of a Dickensian bureaucratic machine, as it churns its cycle for up to two days — never once given the opportunity to show a judge that there is absolutely no reason to hold him, that a mistake has been made.”). This 48-hour standard is well-established. State courts and local police and jail officers comply with it routinely. A law-abiding citizen who has been misidentified is therefore vulnerable to only a relatively brief detention before he may insist on having a judge take a close look at a claimed misidentification.
The process due to a parolee arrested on a charge of parole violation is quite different. In such cases, a preliminary hearing “to determine whether there is probable cause” to detain the arrestee need be held only “as promptly as convenient after arrest while information is fresh and sources are available.” Morrissey v. Brewer, 408 *834 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In Atkins’ case, it was a full seven days before he had even that preliminary hearing. Delays as long as 24 days between the arrest and even the preliminary hearing are constitutionally permissible, even without any showing of emergency or extraordinary circumstance. See Faheem-El v. Klincar, 841 F.2d 712, 714-15, 723 (7th Cir.1988) (en banc). While the probable cause determination “should be made by someone not directly involved in the case,” the hearing officer “need not be a [neutral and detached] judicial officer” and may be an administrative official such as a parole officer. Morrissey, 408 U.S. at 485-86, 92 S.Ct. 2593.
The reason we tolerate the slower and different procedures for parolees is precisely because they are parolees. They have already been convicted of a crime through the full processes of the criminal law. Their interest in liberty is much more limited than for the vast majority of citizens who are not on parole. These limitations and their importance to the due process calculus are woven throughout the Supreme Court’s opinion in Morrissey, which balanced competing interests and found the slower, more limited procedures permissible for parole revocation proceedings. “Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.” 408 U.S. at 480, 92 S.Ct. 2593.
When Atkins was arrested, though, the pivotal issue was whether he was actually an individual on parole. Morrissey and its progeny dealing with parolees never address this narrow issue. Those cases all operate on the justifiable assumption that the right person has been arrested — someone actually on parole, subject to restrictions on - liberty. That’s precisely why those decisions tolerate the slower review processes. That reasoning simply does not extend to the issue of what processes are necessary to determine whether an arrested person is actually on parole. If that question of identity — is the arrested person actually the parolee sought by the warrant? — is subject to only the much slower Morrissey procedures, then any law-abiding citizen faces not just 48 hours of detention, decried by Justice Sealia but accepted by a majority of the Supreme Court in McLaughlin, but perhaps weeks of unjustified detention without any right to a hearing before a judge.
Because an arrestee’s identity — parolee or average citizen — determines whether he is entitled to the 48-hour GerstemMcLaughlin processes or the much slower Morrissey processes, I conclude on the merits of Atkins’ case that due process of law requires greater procedural protection to guard against cases of mistaken identity in the context of parole-violation warrants. Cf. Patton v. Przybylski, 822 F.2d 697, 700-01 (7th Cir.1987) (noting that “to arrest a person over his vigorous protest that he is the wrong man ... and keep him in jail [for almost a week] without either investigating the case or bringing him before a magistrate raises serious constitutional questions ... under the due process clause”); Brown v. Patterson, 823 F.2d 167, 169 (7th Cir.1987) (“[A] prolonged confinement of an arrested person without a hearing to determine whether he is the person named in the warrant would be a deprivation of liberty without due process of law....”).
To decide how much process is due, the familiar three-part Mathews v. Eldridge analysis provides the framework. 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). We consider (1) the private interest that will be affected by the government action; (2) the risk of an erroneous depri *835 vation with the procedures in place and the probable value of different procedures; and (3) the government’s interest, including the costs of different procedures. See Hernandez v. Sheahan, 455 F.3d 772, 777 (7th Cir.2006) (applying Mathews to analysis of detainee’s claim of mistaken identity after he had appeared before judge).
First, the private interest at stake here is significant: basic liberty, for a period that can be measured in weeks. While an innocent person is being held in prison for weeks, his entire life can be disrupted — by loss of a job, inability to support and care for loved ones, inability to tend to financial affairs, and on and on. That is why Ger-stein and McLaughlin tolerate no more than 48 hours delay before an arrestee must be brought before a judge. But an arrestee mistakenly identified as a parole violator may be wrongfully incarcerated without a hearing for much longer than the 48 hours tolerated for ordinary arrests.[1]
Second, while the risks of an error are difficult to quantify on this record, where the claim was resolved without a trial, they are likely to be significant. Justice Stevens suggested in a similar case that the risk of misidentifications based on coincidental similarity of names, birthdays, and descriptions is “unquestionably substantial.” Baker v. McCollan, 443 U.S. 137, 155-56, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (Stevens, J. dissenting).[2] In this case, the coincidence of the similar birth dates and Social Security numbers may help to explain plaintiff Atkins’ unfortunate experience.[3] As my colleagues point out, police officers on the street are entitled to reasonable latitude in executing arrest warrants. See Patton, 822 F.2d at 699-700 (affirming dismissal of claim against police officer who arrested person with same name, race, and year of birth as person in warrant, but with different date of birth and address); see generally Hill v. California, 401 U.S. 797, 803-04, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (police acted reasonably and in good faith in arresting the wrong person). This is because law enforcement officers making arrests in the field will often have little information at hand to be absolutely sure whether they have arrested the proper individual.
The logical and practical consequence of giving police officers room to make mistakes is that there will be more mistakes. More innocent people will be arrested. And when, as was the case here, one unit of government (the City of Chicago) makes an arrest on behalf of another unit of government (the State of Illinois), the risk *836 of miseommunications and mistaken identifications is enhanced.
Regarding the third Mathews factor, the government’s interests do not weigh against a prompt judicial hearing to determine whether a person arrested on a parole warrant is in fact the parolee sought. The government has a powerful interest in speedy, accurate resolutions of alleged misidentifications. If the wrong person has been arrested on the warrant, it means that the right person remains at large, possibly endangering others. Moreover, it would not unreasonably burden government resources to make a quick determination whether an individual arrested on a parole violation warrant is the same person whose parole is already being closely monitored by the authorities. Parolees have already been convicted. All of their pertinent identifying information should be readily available from the original incarceration. Probable cause to believe the person being held is the parolee sought could often be established by as little as the testimony of the supervising parole officer.[4] This case illustrates the ease with which a misidentification of a parolee can be confirmed. According to the Prisoner Review Board’s eventual order to release Atkins from custody, “documents and a call to the records office” were enough to confirm that Atkins was not in fact on parole.
Upon weighing the three Mathews factors, I believe that due process requires some minimal judicial procedures to ensure against mistaken misidentifications in the context of parole violation warrants. This is not a radical conclusion — the Federal Rules of Criminal Procedure already provide this basic protection to persons arrested on federal warrants for violation of supervised release (equivalent to parole for these purposes) or probation. Rule 32.1(a)(1) requires that a person “held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge.” And when the person is in custody in a different federal court district, the rule specifically requires the magistrate judge to find whether “the person is the same person named in the warrant.” Fed. R.Crim.P. 32.1(a)(5)(B)(ii). I am not suggesting that every detail of Rule 32.1 is constitutionally mandated, but a prompt appearance before a judge is needed to provide the process due when there is a claimed misidentification of the person in custody.[5]
*837 My colleagues ultimately decline to decide the merits of Atkins’ due process claims but rely on the defense of qualified immunity to affirm the dismissal. I agree that qualified immunity applies and therefore concur in that portion of the opinion and in the judgment. But I believe that we should address the merits, for both substantive and procedural reasons.
The substantive reasons are those I have explained above. My colleagues suggest, however, that we should know more about the relative merits of judicial and administrative decision-making before reaching the conclusion on the merits. After all, perhaps these identification issues are straightforward and suitable for administrative decision-making. Both judges and parole officials can make mistakes. The same argument could have been made in Gerstein and McLaughlin, however. The Supreme Court weighed the relevant constitutional interests in Gerstein and McLaughlin, and it chose judicial decision-making for good reasons. Gerstein and McLaughlin tell us that persons in the United States cannot be held in custody for more than 48 hours without requiring executive branch officials — like police or parole officers — to convince a judicial officer that there is good reason to hold the person. That rule does not disparage the abilities of executive decision-makers. The rule simply insists that executive branch actions to deprive a person of basic liberty must be subject to immediate and independent review. The rule recognizes human and institutional fallibility, as well as the value of review and accountability. Cf. Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (enforcing search warrant requirement of the Fourth Amendment: “The point of the Fourth Amendment ... is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate ----”).
If my conclusion on the merits of Atkins’ claim is not correct, then an innocent, law-abiding person could be sent to prison without ever having a fact-finding hearing before a judge, let alone a jury trial. Morrissey allows administrative decision-makers to conduct both the preliminary and plenary hearings to revoke parole. 408 U.S. at 485-88, 92 S.Ct. 2593. Judicial review can be limited to deferential review of the discretionary administrative decision. See Black v. Romano, 471 U.S. 606, 611-12, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) (identifying due process requirements that courts can enforce); Luther v. Molina, 627 F.2d 71, 75-76 (7th Cir.1980) (decision to revoke parole was subject to deferential judicial review under Administrative Procedures Act). We accept those procedures for those who have already been convicted of a crime and have then been granted parole (or supervised release, the modern federal parallel). But since Gerstein, courts have never held such procedures as sufficient to deprive an unconvicted person of his or her liberty for more than 48 hours.
My colleagues’ doubts about the choice of decision-maker also do not address the timing issue. Gerstein and McLaughlin show us that the outer boundary for executive-branch detention, in all but the most unusual cases, is 48 hours. For persons actually on parole, we have held that detention for as long as 24 days is permissible without even a preliminary hearing before a parole official. Faheem-El, 841 F.2d at 714-15, 723. I think that result is clearly unconstitutional, under Gerstein *838 and McLaughlin, as applied to a person who is not actually on parole.
There are also sound procedural reasons for deciding the merits before deciding qualified immunity here. After Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we are not required to decide the merits before we decide qualified immunity, but the choice is left to our sound discretion. The two-step process set forth in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)— decide the merits and then qualified immunity — is “often beneficial” in promoting the development of constitutional precedent, especially with respect to “questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.” Pearson, 129 S.Ct. at 818. This case fits that description.
Unless and until this view of the merits is accepted, law-abiding citizens who are not on parole remain vulnerable to lengthy deprivations of liberty without due process of law and without effective remedy. Individual defendants will be protected from damages liability by qualified immunity, while state governments are protected from damages liability by the limits of 42 U.S.C. § 1983 and the Eleventh Amendment. See Will v. Michigan Dep’t of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It will also be difficult to find an appropriate plaintiff in a case seeking injunctive or declaratory relief. Surely few law-abiding citizens would have in advance a well-founded fear of being subjected to the treatment that Atkins alleged. To obtain prospective relief, even someone who has experienced such treatment by mistake might well need to show that he has an objectively reasonable fear of being subjected to it again, which I expect would be difficult. See, e.g., Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (ordering dismissal for lack of case or controversy; even if plaintiff was subjected to illegal choke-hold by police in past, there was no real and immediate threat that it would happen to him again).
Returning to the specifics of this case, one of the mysteries here is why it took so long to straighten out Atkins’ identity and status. My colleagues suggest that Atkins bears some responsibility for this because he gave inconsistent defenses at his preliminary hearing (before a parole official, seven days after his arrest). The defenses were, as far as I can tell, that the police had the wrong man and that plaintiff Atkins’ earlier parole had expired. I do not see those defenses as inconsistent. We have some indication that plaintiff Atkins saw the computerized information that the police relied on to arrest him. If that is true, he could certainly have known whether or not he was in fact the correct William Atkins. Plaintiff Atkins also had in fact been on parole that expired several years earlier. An honest person in his predicament could quite reasonably volunteer that information to the hearing officer in the interest of full disclosure.[6]
For these reasons, although the district court’s dismissal was correct based on *839 qualified immunity, I would also hold that Atkins alleged sufficiently that his right not to be deprived of his liberty without due process of law was violated when he was held for so long without being brought before a judge to determine whether there was probable cause to believe he was in fact on parole and wanted under the parole violation warrant.

. The difference between the permissible initial detention times before a preliminary hearing for average citizens (two days) and parolees (the 24 days we found acceptable in Faheem-El) is enough to distinguish those cases rejecting requests for stricter jailhouse procedures to prevent misidentifications in the context of the typical warrantless arrest. See, e.g., Hernandez, 455 F.3d at 775 ("a police department is not required to be credulous but may limit its attention to information it deems reliable — especially because detention on the police department’s resolution cannot exceed 48 hours”).

. The man arrested in Baker v. McCollan was in fact the person identified in an arrest warrant that had been issued by a judicial officer. 443 U.S. at 140-41, 99 S.Ct. 2689. The man’s brother had stolen his identification and had given law enforcement officials the wrong identity when he had been arrested. In Atkins' case, the parole violation warrant was issued not by a judicial officer, but by parole officials.

. The fact that the two William Atkinses shared the first three digits in their Social Security numbers does not help with identification. It means only that both were assigned their numbers in the same geographic region. See Social Security Administration, Frequently Asked Questions, Answer #18, www.ssa.gov/history/hfaq.html (last visited Jan. 19, 2011).

. On our limited record, we are left to wonder where the suspected Atkins' parole officer was during the five weeks that plaintiff Atkins was in custody. That officer presumably could have straightened out this matter immediately. According to the hearing officer's report of findings made after Atkins' preliminary parole violation hearing, however, the only person who testified at that preliminary hearing was plaintiff Atkins himself.

. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), does not lend support to the procedures used here. The Supreme Court held in Baker that the person named in an arrest warrant issued by a judicial officer did not have a viable § 1983 claim against the sheriff who kept him in custody under the warrant without bringing him before a court over a three-day holiday weekend. Crucial to the Court’s analysis in Baker was the fact that the arrest had been made based on a warrant issued by a judge. Id. at 143-44, 99 S.Ct. 2689. Baker also relied on the "reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers” in the constitutional system, id. at 145, 99 S.Ct. 2689, but there is no such division of labor in the Illinois parole system. Parole violation warrants may be issued in Illinois without involving any judicial officers at all. 730 ILCS 5/3-14-2(c) & (c-1); see People ex rel. Johnson v. Pate, 47 Ill.2d 172, 265 N.E.2d 144, 146 (1970). Baker also relied on the fact that "one detained [must] be accorded a speedy trial.” 443 U.S. at 145, 99 S.Ct. 2689. A hearing before a parole officer or a parole *837 board is not the “trial” contemplated in Baker.

. My colleagues also suggest that plaintiff Atkins was probably the right William Atkins sought under the parole arrest warrant. It is not clear how they reach that conclusion, however. Perhaps the parole records had the wrong birth date and the wrong Social Security number, making it only appear that they described a William Atkins other than the plaintiff. But it seems to me more likely, and at least equally plausible, that with a name as relatively common as William Atkins, there simply were two different people, the plaintiff who had been on parole a few years earlier and another who was on active parole in 2003. In light of the district court's dismissal, we should take that portion of the complaint at face value and assume that the police arrested the wrong man.