Justino **RODRIGUEZ**

v.

Lawrence V. **ROTH**, Jr., **Warden and John Doe I, II, III and IV.**

Civ. A. No. 81–0494.

United States District Court, E. D. Pennsylvania.

May 27, 1981.

M. Patricia Carroll of Carroll & Carroll, Philadelphia, Pa., for plaintiff.

John M. McAllister, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, Justino Rodriguez, has brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants arrested and detained him in violation of his constitutional rights. The incidents underlying this controversy began in June, 1977, when a man, identified as Justino Rodriguez, was arrested in Montgomery County. [Plaintiff, who had previously lost his driver's license, surmises that this man might have been using plaintiff's license as identification.] When this gentleman failed to appear at his arraignment on October 5, 1977, a bench warrant was issued in the name of "Justino Rodriguez". On June 12, 1978, while he was driving in Philadelphia, plaintiff was stopped by the Philadelphia police. The Philadelphia police discovered the outstanding warrant, and plaintiff was then held in Philadelphia for a few hours while Montgomery County police compared plaintiff with photographs and descriptions of the "Justino Rodriguez" named in the warrant. Plaintiff was released after the police concluded that he was not the person named in the warrant.

On January 24, 1979, plaintiff, Justino Rodriguez, was again stopped by a police officer while he was driving in Philadelphia. After examining his license, the officer took plaintiff into custody, and this time, plaintiff was taken to Norristown where he was charged with several criminal counts pursuant to the bench warrant issued for the arrest of a "Justino Rodriguez" on October 5, 1977. He was arraigned on January 25, 1979 and bail was set at $5,000. As plaintiff was unable to post bail, he was held in Montgomery County Prison—all the while protesting that he was not the "Justino Rodriguez" named in the warrant—until February 23, 1979, when he was released pursuant to a writ of habeas corpus. Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants, prosecutorial and custodial personnel of the County of Montgomery, deprived him of rights secured to him by the Fourth, Fifth, Sixth and Fourteenth Amendments. Defendants have moved to dismiss the complaint on the ground that "confinement . . . due solely to a case of mistaken identity . . . is not sufficient to state a claim under 42 U.S.C. § 1983 . . . *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). . . ." Defendant's Memorandum of Law at 2.

In *Baker v. McCollan, supra,* the plaintiff was arrested pursuant to a warrant apparently intended for his brother, who had been using a duplicate of the plaintiff's license. The plaintiff was detained from December 30, 1972 over the New Year weekend until January 2, 1973, when officials compared his appearance with a photograph of the wanted man, realized their mistake, and released the plaintiff. In deciding that this detention did not amount to a deprivation of liberty "without due process of law," the Court noted that:

[R]espondent's complaint is simply that despite his protests of mistaken identity, he was detained . . . from December 30 . . . until January 2, when the validity of his protests was ascertained. Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for the purposes of our decision, to the requirements of the Fourth Amendment. . . . We may even assume *arguendo* that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

\* \* \* \* \* \*

. . . A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers . . . is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to independently investigate every claim of innocence, whether the claim is based on mistaken identity or a defense. . . . Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. 443 U.S. at 143–146, 99 S.Ct. at 2694–2695.

In this action, plaintiff alleges that he was held for a period of a month—as opposed to the three days in *Baker, supra*—in a Montgomery County prison. He alleges that during this entire period he continued to protest that he was the victim of a mistake in identity. Apparently, this was susceptible of a speedy resolution: As noted above, plaintiff had been detained before, on June 12, 1978, under similar circumstances, but had been released within a few hours when officers from Montgomery County concluded that plaintiff did not fit the description of the person for whom the warrant had been issued. Moreover, on this second occasion, plaintiff was only released pursuant to a writ of *habeas corpus*, defendants apparently having failed to investigate plaintiff's repeated claim of mistaken identity. These allegations present quite a different picture to that in *Baker*, where the plaintiff alleged "simply that despite his protests of mistaken identity, he was detained . . . from December 30 . . . until January 2, when the validity of his protests was ascertained." *Baker, supra*, at 144, 99 S.Ct. at 2694. As *Baker* assumed *arguendo* that, in some instances, a "detention . . . in the face of repeated protests of innocence," *Baker, supra*, at 145, 99 S.Ct. at 2695, might give rise to a § 1983 claim, it cannot be said that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Accordingly, defendant's motion to dismiss is denied.