**Anthony J. KELLY, Plaintiff,**

v.

**Officer Demoss JONES et al., Defendants.**

**CIVIL ACTION No. 14–cv–4317**

United States District Court, E.D. Pennsylvania.

Signed April 17, 2015

Order Denying Reconsideration Nov. 24, 2015

Joseph S. Oxman, Oxman Goodstadt Kuritz, Philadelphia, PA, for Plaintiff.

Anastasia Filopoulos, Bennett Bricklin & Saltzburg, Philadelphia, PA, Suzanne McDonough, Holsten & Associates, Media, PA, for Defendants.

## MEMORANDUM

McHUGH, United States District Court Judge

This is a civil rights action brought by Plaintiff Anthony Kelly, who wrongfully spent five weeks in jail following his arrest pursuant to an aged warrant, because the officer who requested its issuance allegedly refused to investigate an airtight alibi-that he was incarcerated when the crime for which he was arrested occurred. The warrant in question was more than five years old, contained no physical description, and specified a nickname for the suspect which Plaintiff had in fact never used. On these alleged facts, where the alibi asserted would have been completely exculpatory and could have been objectively verified through an official source, I am persuaded that Plaintiff has stated a viable claim for malicious prosecution.

## I. Factual Background

Plaintiff asserts claims for False Arrest, False Imprisonment, Malicious Prosecution, and Failure to Investigate under both 42 U.S.C. § 1983 and Pennsylvania state law against Defendant–Officers John Gret-sky, S. Gretsky, and Demoss Jones, arising out of his arrest in 2012. Additionally, Kelly brings a state law claim for Intentional Infliction of Emotional Distress against the three officers, and a § 1983 Monell claim against the City of Chester. Plaintiff was arrested outside of his place of employment on June 6, 2012. The arrest was made pursuant to a warrant for an alleged assault and robbery, issued upon an Affidavit of Probable Cause sworn to by Officer Demoss Jones on October 23, 2006. That affidavit did not contain a physical description of the suspect, but merely listed the suspect's name, Anthony Kelly, and his alias, "Izzy." Officers John Gretsky and S. Gretsky stopped Plaintiff, and upon hearing that the man they had stopped was named Anthony Kelly, made no attempt to determine whether he also had the nickname "Izzy." The Officers Gretsky executed the warrant and took Plaintiff into custody. Officer Jones, who was not among the arresting officers, was informed of the arrest immediately after the warrant was executed.

Plaintiff told the Officers that it was impossible for him to have committed the crimes listed in the warrant because he was incarcerated during the period in 2006 when the crimes were alleged to have occurred. Plaintiff alleges that at no time did any of the officers investigate his claim that he was incarcerated at the time of the crimes and could not have committed them; no officers attempted to contact the initial victim to confirm Plaintiff's identity; no officers attempted to verify his identity as "Izzy"; and that the officers had a mugshot of the actual "Izzy" in their possession but ignored that picture.

Plaintiff spent more than a month in county jail as a result of the arrest, with bail set at $20,000. On July 18, 2012, charges against Plaintiff were dismissed with prejudice by Judge Spencer Seaton,

Jr., of the Chester Magisterial Court. Plaintiff has pleaded false arrest and imprisonment, but concedes that the statute of limitations for those claims has expired. Accordingly, the sole remaining theory of liability is malicious prosecution, based upon his continued detention after arrest.

## II. Malicious Prosecution and Failure to Investigate

 Plaintiff asserts malicious prosecution claims against all three officers under both § 1983 and under Pennsylvania common law. Under § 1983, malicious prosecution claims require a showing that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Kossler v. Crisanti,* 564 F.3d 181, 186 (3d Cir.2009). Pennsylvania common law similarly requires that "[t]he defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249,* 518 Pa. 517, 520–21, 544 A.2d 940, 941 (1988).

 Kelly also asserts claims for "failure to investigate." Although some decisions discuss such a theory in connection with claims for malicious prosecution, I share the concern of my colleague Judge Goldberg that the "contours of a standalone claim for failure to investigate are not well-defined within this Circuit." *Briscoe v. Jackson,* 2 F.Supp.3d 635, 645 n. 5 (E.D.Pa.2014). As a result, I will not consider such failure to give rise to a separate claim, but rather consider the officers' lack of investigation only as it pertains to the elements of a claim for malicious prosecution.

 Under both the federal and state standards, Defendants must have initiated the criminal proceedings without probable cause. Therefore, if probable cause existed to initiate the proceedings against Kelly, the malicious prosecutions claims must be dismissed. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir.1995). While " 'the question of probable cause in a section 1983 damage suit is one for the jury,' a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.' " *Estate of Smith v. Marasco,* 318 F.3d 497, 514 (3d Cir.2003) (quoting *Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998)).

Because the officers involved played different roles, I evaluate Plaintiff's claims separately.

### A. Claims Against Gretsky Defendants

Officers John Gretsky and S. Gretsky are not alleged to have played any prior role in the investigation or the issuance of the arrest warrant. Technically speaking, they did not, in the first instance, "initiate" a criminal proceeding. I have some questions as to the validity of the claim against them on that basis alone. One could, however, consider their arrest of Plaintiff to constitute initiation of proceedings, and for purposes of discussion I will assume that bringing Kelly into custody would suffice

to meet the first element of a malicious prosecution claim. The analysis then shifts to whether they acted with probable cause.

 To determine whether probable cause existed as to the arresting officers, the focus of the inquiry is on the arrest itself. Plaintiff concedes that Officers John and S. Gretsky stopped and arrested him based on an outstanding arrest warrant matching his name. "It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." *Kis v. Cnty. of Schuylkill,* 866 F.Supp. 1462, 1469 (E.D.Pa.1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). "Law enforcement officers who arrest solely on the basis of such a warrant are immune from suits alleging a Constitutional violation." *Id.* Plaintiff asserts a single defect in the warrant—that it contained only a name with no physical description of the person to be arrested. However,

> [t]he requirements for the execution of a valid arrest warrant are clear. The arrest warrant must contain "the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty." Fed.R.Crim.P. 4(c)(1). Only in this way can an arrest warrant meet the particularity requirements of the Fourth Amendment. Courts have long held that "John Doe" warrants are insufficiently particular to meet this standard. *United States v. Doe,* 703 F.2d 745, 747 (3d Cir.1983). Beyond that, however, a warrant that correctly names the person to be arrested generally satisfies the requirements of the Fourth Amendment and no other description of the arrestee is usually necessary in the warrant.

*Kis v. Cnty. of Schuylkill,* 866 F.Supp. 1462, 1469–70 (E.D.Pa.1994) (citing *Powe v. City of Chicago,* 664 F.2d 639, 645 (7th Cir.1981)); *see also Wanger v. Bonner,* 621 F.2d 675, 682 (5th Cir.1980) ("the inclusion of the name of the person to be arrested on the arrest warrant constitutes a sufficient description to satisfy the Fourth Amendment requirement that the person to be seized be described with particularity."). As such, no physical description of a defendant need be included where the name of the defendant is known to those seeking the warrant.

 It is true that "an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the Fourth Amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him." *Powe,* 664 F.2d at 645. Here, however, the warrant contained Plantiff's name. Although in reality Plaintiff was not the correct Anthony Kelly or "Izzy", that does not negate the fact that Plaintiff's exact name was specified in the warrant. The Gretskys merely executed the warrant, and the only defect asserted—the absence of a physical description of the person to be arrested—is not a legal defect where the suspect's name is set forth. Therefore, there are no facts pleaded which, when accepted as true, support the conclusion that the Gretskys lacked probable cause to arrest Plaintiff in executing the warrant.

 The question then becomes whether the Gretskys, who acted here solely as arresting officers, had a further duty to investigate the strength of the case. In situations where an officer's involvement is limited to executing a facially valid warrant, the Supreme Court has held that liability should ordinarily not attach: "Given the requirements that an arrest be made only on probable cause and that one

detained be accorded a speedy trial, a sheriff executing a valid arrest warrant is not required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 138, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *accord Eckman v. Lancaster City*, 742 F.Supp.2d 638, 653 (E.D.Pa.2010) ("Once a police officer has established probable cause, the Constitution does not require that he continue to investigate to uncover potentially exculpatory evidence.").

▇▇▇ Like the sheriff in *Baker v. McCollan*, the Gretskys acted on the basis of a facially valid warrant issued in reliance on the sworn allegations of another law enforcement officer. In the ordinary course of events they would not have a duty to inquire further, as "the Constitution does not guarantee that only the guilty will be arrested." 443 U.S. at 145, 99 S.Ct. 2689. The *Baker* rule would apply with particular force here in that the officer who sought the arrest of "Anthony Kelly" was a member of the same police department, still on active duty when the warrant was executed. It was Officer Jones' affidavit of probable cause that led to Plaintiff's arrest, and he was advised a suspect was in custody. On these facts, I conclude that the Gretsky Defendants are entitled to dismissal of the claims against them.

## B. *Claim Against Officer Jones*

▇▇▇ The claim against Jones stem from alleged reckless conduct in seeking the warrant in 2006, and his refusal to investigate and confirm Kelly's claim that he could not have been the suspect named in the warrant because of his previous incarceration. There are meaningful differences in the role played by an officer who merely effectuates an arrest as compared to an officer responsible for pressing charges. Although the conduct of the arresting officer results in a suspect being taken **into** custody, whether the suspect continues to be **held** stems from the decisions of the prosecuting officer, in this case Officer Jones. The defense contends the principle recognized by the Supreme Court in *Baker*, that an arresting officer has no duty to investigate, should also extend, without exception, to the prosecuting officer whose affidavit formed the basis for the arrest, and that it should extend indefinitely, regardless of how long a suspect is detained. This ignores the fact that once a suspect has been detained, law enforcement has additional time and resources to determine whether that suspect was in fact the individual involved in the crime. Ironically, and of significance here, the plaintiff in *Baker* was released three days later, after being remanded into the custody of the county which had issued the warrant, which then checked the file photo of the wanted man and acknowledged it was a case of mistaken identity. 443 U.S. at 141, 99 S.Ct. 2689. These are the very steps Kelly asserts should have been taken in his case. He was already in the custody of the issuing jurisdiction, and he requested a comparison with the mug shot of the suspect on file, as well as a check of his record of incarceration. Such a review would have negated any finding of probable cause.

For practical purposes, the question is how far to extend the protections of *Baker*. To state the matter differently: if the obligation of the arresting officers was to make certain they were seizing *an* Anthony Kelly, did the prosecuting officer have an obligation to consider whether they had arrested *the* Anthony Kelly against whom he had alleged a finding of probable cause?

On the record here, I conclude that further inquiry was required. ·

██ The warrant in question was more than five years old. Neither Plaintiff's first name nor last name was exotic or unusual, making it entirely probable that there could be more than one "Anthony Kelly" within the jurisdiction. Although there is no requirement that a warrant include a physical description, the absence of such a description, particularly when coupled with relatively common names, creates a wider possibility of error. The suspect being sought had a particular nickname, about which Plaintiff was not asked. In *Walker v. Spiller*, No. 97–6720, 1998 WL 306540 (E.D.Pa. June 9, 1998), in allowing a similar claim to proceed, my colleague Judge Brody held that an officer's duty to investigate an alibi such as incarceration "must be weighed in the context of the strength or weakness of the probable cause evidence." *Id.* at *6. The combination of factors set forth above made the probable cause to hold Kelly questionable, as ultimately confirmed by the dismissal of charges against him.

This is not a case where Plaintiff raised an alibi or excuse that would have required the officer to go outside of the department seeking exculpatory evidence. It is not a case where the validity of the alibi depended upon the veracity of witnesses who might have an incentive to lie, or was circumstantial and dependent on a series of inferences. To the contrary, there was objectively verifiable information from official sources that Officer Jones could have consulted with minimal effort: a mug shot of the suspect and criminal records that would have definitively established that the wrong person had been arrested. As a definitional matter, no "investigation" was required, just verification of a single fact— was Plaintiff incapable of having committed the crime for which he was arrested by virtue of his previous incarceration? With Kelly safely in custody, confirmation of that fact would not have interfered with Officer Jones' discharge of his duty or required him to do anything more than check information available to and routinely used by police.

In evaluating issues of probable cause and the duty of an officer to consider potentially exculpatory evidence, the Tenth Circuit has recognized a distinction between "fundamental" evidence, which an officer must consider, and evidence that could be subject to a variety of interpretations. *See Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir.1995). The evidence here would certainly be considered fundamental, given that it was objective evidence from an official source which would completely exonerate the suspect. Other circuits have recognized that in evaluating an officer's assessment of probable cause, courts need to consider not just how the particular officer assessed the case, but how a police officer acting reasonably under the circumstances should have perceived it. *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir.1988). Or, as the Seventh Circuit has described the duty, "[a] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) (officer must be held to knowledge of reasonably discoverable information bearing upon probable cause to arrest for child neglect); *see also Estevez v. City of Philadelphia*, No. 06–3168, 2007 WL 707358 (E.D.Pa. Mar. 2, 2007) (Schiller, J.)

Plaintiff must finally show that the officer acted maliciously or for a purpose other than bringing the plaintiff to justice. At this preliminary stage in the case, given this constellation of facts, Kelly is at a minimum entitled to discovery on his claims. There was clearly reason to ques-

tion whether the correct suspect had been arrested; no legitimate law enforcement purpose would be served by keeping an innocent person in custody; and I am persuaded that failure to consult a readily available trustworthy source of official information could be considered shocking, where the consequence of refusing to take such a simple action resulted in a deprivation of liberty.

■■■ Qualified immunity does not bar the malicious prosecution claim against Officer Jones. The Supreme Court has put forth a two-step test for determining whether a government official, such as a police officer, is entitled to qualified immunity when sued under § 1983. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Curley v. Klem,* 499 F.3d 199, 206 (3d Cir.2007).

> First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citations omitted).[1]

■■■ With regard to the first portion of the test, I have already determined that Plaintiff has alleged enough facts to make out a potential violation of a constitutional right at this stage of the litigation, though such a violation will later need to be supported by facts. Next, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151; *Kelly v. Bor-*

*ough of Carlisle,* 622 F.3d 248, 253 (3d Cir.2010). As the Third Circuit has stated, "a police officer is not entitled to qualified immunity if 'a reasonably well-trained officer in [Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Kelly,* 622 F.3d at 255 (quoting *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

While this language from *Kelly* and *Malley* speaks to whether the act of applying for a warrant, it is equally applicable to the situation before this Court, where qualified immunity hinges on the continued existence of probable cause following arrest, when the question of mistaken identity presented itself. Probable cause ceases to exist when it becomes clear that the wrong person has been taken into custody—a fact that Officer Jones could have readily ascertained. And the proposition that no citizen can be imprisoned without probable cause would be self-evident to any officer.

### III. *Monell* Claims

■■■ Kelly alleges that the City of Chester failed properly to train its officers as to the limits of their authority. As to specificity, the defense is correct that the Complaint is not impressive in its detail. Taken in its entirety, however, it adequately states a claim for municipal liability, and certainly provides sufficient notice to the City of what is at issue. Whether Plaintiff can support a claim of lack of training will be determined later in the litigation. The Motion to Dismiss on that ground will be denied.

■■■ However, the scope of the *Monell* claim is limited by the statute of limitations. "In actions under 42 U.S.C.

1. *Pearson* clarified that these two require-

ments need not be determined in that order.

§ 1983, federal courts apply the state's statute of limitations for personal injury," and "Pennsylvania's statute of limitations for personal injury is two years." *Sameric Corp. of Delaware v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998). The wrongful arrest claim accrued upon Plaintiff's arrest on June 6, 2012, and was not filed until July 18, 2014. Accordingly, any claim under *Monell* arising out of a failure of training or lack of policy with respect to the initial arrest is barred. Plaintiff's contentions, if any, must be limited in focus to policies, procedures, or training relevant to the malicious prosecution claim as defined by this memorandum.

## IV. Intentional Infliction of Emotional Distress

 There is no constitutional claim for Intentional Infliction of Emotional Distress. Such a claim can survive only if it is cognizable under state law. The Third Circuit has predicted that the Pennsylvania Supreme Court will ultimately recognize such a theory. *Pavlik v. Lane Limited/Tobacco Exporters International,*[2] 135 F.3d 876 (3d Cir.1998). With that assumption, I am not persuaded that the conduct alleged here will suffice. The Superior Court has accurately summarized the Pennsylvania decisions as follows:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society. It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been charac-

terized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Reardon v. Allegheny College,* 926 A.2d 477, 488 (Pa.Super.Ct.2007).

 Upon my review of the cases, they seem to require conduct deliberately pursued for the specific purpose of causing affront to a specific individual. Although I find the police conduct alleged here deeply troubling and sufficient to rise to the level of a constitutional deprivation, it lacks the personal *animus* Pennsylvania cases appear to require.

## V. Conclusion

Count I of the First Amended Complaint for False Arrest and False Imprisonment will be dismissed as to all Defendants, but the claim for Malicious Prosecution under this Count will remain as to Officer Demoss Jones. Count II for Failure to Investigate will be dismissed, but allegations pertinent thereto are deemed incorporated within Plaintiff's claim for Malicious Prosecution. Count III for Malicious Prosecution will be dismissed as to Officers John Gretsky and S. Gretsky, but not as to Officer Demoss Jones. Count IV for Intentional Infliction of Emotional Distress will be dismissed as to all Defendants. Count V for Failure to Train, Supervise, and Discipline will be dismissed in part, as it applies to Claims arising out of False Arrest. Claims arising out of Malicious Prosecution survive. An appropriate order follows.

### *ORDER*

This 17th day of April, 2015 after reviewing Defendants' Motion to Dismiss

---

**2.** One is tempted to describe Intentional Infliction of Emotional Distress as a hypothetical tort in Pennsylvania. Although the Supreme Court has made reference to its potential existence, it has yet to find a fact

pattern sufficiently egregious to permit recovery of damages. See Litvin & McHugh, Pennsylvania Torts, Section 11.7 (West/Thompson Reuters, 1996; Supp.2015).

and all accompanying submissions, it is hereby **ORDERED** that:

- Counts I, II, and IV of the First Amended Complaint are **DISMISSED** as to all Defendants. Malicious Prosecution under Count I will be considered under Count III instead. Plaintiff's Failure to Investigate claim is incorporated into his Malicious Prosecution claim.
- Count III is **DISMISSED** as to Officers John Gretsky and S. Gretsky, but will remain against Officer Demoss Jones.
- Count V is **DISMISSED IN PART**, as it applies to claims arising out of False Arrest. Claims arising out of Malicious Prosecution remain.

## MEMORANDUM ON RECONSIDERATION

McHUGH; United States District Court Judge

Defendants Officer Demoss Jones and the City of Chester moved for reconsideration of my previous decision denying qualified immunity for Plaintiff Anthony Kelly's unlawful incarceration for a period of approximately five weeks following his arrest on a warrant obtained by Officer Jones. For the reasons that follow, reconsideration is denied, and my previous order and opinion denying Defendants' Motion to Dismiss the claims against Officer Jones and City of Chester will be reinstated.[1]

## I. Defendants' arguments in support of their Motion to Dismiss and Motion for Reconsideration fail to address those facts which are critical to whether qualified immunity is warranted.

Plaintiff was taken into custody as a result of a warrant issued in reliance upon representations made by Defendant. As set forth in my opinion of April 17, 2015, although that warrant was legally sufficient, it contained no physical description of the suspect. Neither "Anthony" nor "Kelly" is a unique or unusual name. The warrant in question was not executed close in time to the offense; more than five years had elapsed. The target of the warrant was known to use a nickname which Plaintiff disavowed. Most importantly, the police were in possession of a mug shot of the actual perpetrator of the offense, and Plaintiff has pleaded that he advised Officer Jones that the wrong Anthony Kelly had been arrested. Finally, without leaving the police station, either by comparing the mug shot or confirming with a records check that Plaintiff was incapable of having committed the offense because he was incarcerated, Officer Jones could have ascertained that his warrant brought about an erroneous arrest.[2]

---

1. The Motion for Reconsideration was filed as the Court was in final pretrial preparation for a lengthy out-of-district criminal case. In response to Defendant's Motion for an extension of time to file an interlocutory appeal, I vacated the Order so that the parties and the Court would have time to give appropriate consideration to Officer Jones' position. Defendants' Motion for Reconsideration was therefore denied as moot, but this opinion responds to the arguments made by the Defendants in support of that Motion.

2. In light of the exigent circumstances facing the arresting officers in the field, I found that they acted reasonably in arresting Plaintiff despite these now-apparent problems. An arresting officer must have probable cause—determined by an objective inquiry into the facts and circumstances within the officer's knowledge—to believe that the person he is arresting has committed a crime. *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). While "[a]n apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances," *Berg v. Cnty. of*

Defendants' Motion analyzes this case as if Officer Jones was in the same position as the sheriff in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), acting in reliance on information from law enforcement and judicial officers from outside his jurisdiction. In fact, he was personally involved in the sequence of events that brought Kelly into custody and held him for more than a month. This combination of facts, where the Defendant both requested the warrant triggering the arrest, and was then uniquely positioned to determine if probable cause existed to **hold** the individual arrested pursuant to his warrant, led me to conclude that "a reasonably well-trained officer in Defendant's position" would know that detention was unlawful. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir.2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Accordingly, Plaintiff has pleaded facts that, if true, sufficiently state a claim under 42 U.S.C. § 1983, and Officer Jones is not entitled to qualified immunity for his actions.

## II. The initial issuance of a warrant does not relieve Officer Jones of liability for malicious prosecution.

Defendants assume that an initial determination by a judicial officer that there was probable cause to issue a warrant

immunizes police from any further responsibility downstream. The Third Circuit specifically rejected the theory that probable cause to make an arrest necessarily immunizes an officer from liability for malicious prosecution in *Johnson v. Knorr*, 477 F.3d 75, 79 (3d Cir.2007). It held that where an officer's involvement does not end with the issuance of a warrant or the act of arrest, a claim for malicious prosecution may exist. *Id.* As set forth in my earlier opinion, the warrant issued justifies seizing an Anthony Kelly; it does not follow that it allows prolonged detention of the wrong Anthony Kelly. In *Johnson*, the defendant officer affirmatively inserted himself into the post-arrest process by lodging additional phony charges against a suspect with whom he had a confrontation at the station. Here, the Complaint alleges that Officer Jones' post-arrest involvement stemmed from Plaintiff protesting to him that the wrong person had been arrested, but that is a distinction without a difference given that Plaintiff's detention stemmed directly from Officer Jones' warrant. Who would be better qualified and better situated to resolve the issue quickly and definitively other than the very officer whose affidavit of probable cause triggered the arrest?

In that regard, the cases discussed in the Court's earlier decision,[3] which Defendants seek to distinguish, were not cited as

---

*Allegheny*, 219 F.3d 261, 273 (3d Cir.2000), "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (citing *California v. Hill*, 69 Cal.2d 550, 72 Cal.Rptr. 641, 446 P.2d 521, 523 (1968)). For this reason, my prior decision was not vacated as it pertains to the arresting officers, and my Order dismissing Plaintiff's claims against them stands. However, law enforcement officers have additional time and resources to verify a

person's identity once that person has been detained. My analysis of the lawfulness of Officer Jones' conduct, therefore, depends on the reasonableness of his conduct in light of his different role and those different circumstances.

**3.** *Walker v. Spiller*, No. 97–6720, 1998 WL 306540 (E.D.Pa. June 9, 1998); *Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir.1995); *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986).

the basis for denying qualified immunity, but rather for their discussion of what a reasonable officer must consider in assessing the continuing validity of an earlier finding of probable cause.

### III. The right in question was clearly established, such that qualified immunity is unwarranted.

 Defendants argue that Officer Jones is entitled to qualified immunity because the constitutional right allegedly violated was not clearly established at the time Officer Jones acted. To overcome a qualified immunity defense, it must be clear at the time of the officer's conduct that a "reasonable official" would understand his actions violate a particular constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* Because determinations of qualified immunity in the Fourth Amendment context require an analysis of the objective reasonableness of an officer's actions in light of a particular set of facts, the Third Circuit has held that officers must "know and apply general legal principles in appropriate factual situations. Although officials need not predict the future course of constitutional law, they are required to relate established law to analogous factual settings." *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144 (3d Cir.1984) (internal citations omitted). The qualified immunity doctrine does not permit officials "one liability-free violation of a constitutional or statutory requirement" simply because the same set of facts has not yet presented itself for review. *Id.* at 145.

In my initial opinion, I noted that "the proposition that no citizen can be imprisoned without probable cause would be self-evident to any officer." *See United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (holding that an official's conduct may be so obviously unconstitutional that he is not immune even when there is no case law on point, since "[t]he easiest cases don't even arise. There has never been...a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability."). Nonetheless, I am mindful of the Supreme Court's caution against defining the relevant legal rule with too great a level of generality. *Anderson*, 483 U.S. at 639, 107 S.Ct. 3034. Because the defense disputes that Officer Jones should have realized the illegality of detaining Kelly under these circumstances, a more in-depth review of the relevant case law is warranted.

In *Baker v. McCollan*, which I discussed in my original opinion, the Supreme Court considered the case of a plaintiff arrested pursuant to a facially valid warrant issued outside their jurisdiction and detained for three days over a New Year's weekend, then released after officials compared the plaintiff's appearance to a file photograph of the wanted man and realized their error. 443 U.S. at 137, 99 S.Ct. 2689. The Court held that such conduct did not rise to the level of a deprivation of constitutional rights, *Id.* at 146, 99 S.Ct. 2689, but acknowledged that detention based on a misidentification could give rise to a § 1983 claim under more compelling circumstances:

> Obviously one in [the plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the stan-

dards of the Fourth Amendment. ... We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty without due process of law."

*Id.* at 144–145, 99 S.Ct. 2689.

One of the earliest pertinent decisions to consider how long a period of mistaken incarceration must be, or what sorts of procedures must be denied an arrestee to establish a constitutional violation, was issued more than thirty years ago by a highly regarded member of this Court, Judge Louis Pollack. *Rodriguez v. Roth,* 516 F.Supp. 410 (1981). In *Rodriguez,* a driver was stopped and taken into custody based on an outstanding warrant in his name. *Id.* at 411. He was released after only a few hours, however, once officers compared him with photographs and physical descriptions of the "Justino Rodriguez" named in the warrant. *Id.* The plaintiff was then mistakenly arrested again several months later on the same warrant. In the second instance, because the officers did not perform the same comparison, he was detained for a full month and released only pursuant to a writ of habeas corpus. *Id.* Judge Pollack found that the length of the plaintiff's 30-day detention, in conjunction with the plaintiff's repeated claims of mistaken identity and the fact that the officers had the ability to easily

discover the error in identification, "present[ed] quite a different picture to that of *Baker." Id.* at 412. The defendant's motion to dismiss was therefore denied. *Id.*

Although *Rodriguez* is only a district court opinion, it formed part of the basis of the Sixth Circuit's decision in *Gray v. Cuyahoga County Sheriff's Department,* 150 F.3d 579 (6th Cir.1998). There, the court considered the case of a plaintiff who was arrested based on a warrant issued in his name but meant for his brother, and then detained for 41 days even though he repeatedly asserted his innocence and the officers allegedly failed to consult a photograph of the suspect in their possession that bore little resemblance to the plaintiff. *Id.* at 582–83. The Court held that absent sufficient proof that the officers conducted a reasonable inquiry into the discrepancy in the photograph, a trier of fact could find that the officer's "failure ... to ascertain that they were holding the wrong person" violated the plaintiff's constitutional rights. *Id.* at 583.

The Seventh Circuit considered an even shorter detention based on mistaken identity—a seven-day period—to present a possible constitutional violation in *Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987). There, plaintiff had been arrested when a routine warrant check at a traffic stop revealed an outstanding warrant for a suspect with the same name as the plaintiff, but a driver's license issued by a different state. *Id.* at 698. The Court held that the arrest based on that warrant was itself reasonable,[4] but found it unacceptable that

---

4. The Seventh Circuit considered the reasonableness of the arresting officer's actions in light of the practical difficulties facing officers executing warrants in the field:

> If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested,

many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions.

*Patton,* 822 F.2d at 699 (citing *Johnson v. Miller,* 680 F.2d 39, 41 (7th Cir.1982)). As discussed in footnote two, *supra,* these exi-

410

"[a]n innocent person was allowed to languish in jail for almost a week." *Id.* at 700. The Court further advised:

[T]o arrest a person over his vigorous protest that he is the wrong man—a protest given some credibility in this case by the driver's license—and keep him in jail for this period without either investigating the case or bringing him before a magistrate raises serious constitutional questions. ... *Baker v. McCollan* is not to the contrary.

*Id.* at 700–01.[5]

In *Lee v. City of Los Angeles*, 250 F.3d 668, 683–84 (9th Cir.2001), the Ninth Circuit held that a plaintiff stated a claim for relief under § 1983 when the mentally incapacitated plaintiff was misidentified as a fugitive who shared the plaintiff's last name, and officers extradited and then incarcerated the plaintiff without taking steps like checking the fingerprints and physical characteristics that were in their possession to verify that the correct individual was in custody.

Finally, in *Cannon v. Macon County*, 1 F.3d 1558 (11th Cir.1993), the court held that the arrest of a suspect whose name matched a warrant did not support liability, notwithstanding apparent inconsistencies in her appearance and biographic data, but the failure by an official in the police station to investigate the discrepancies during seven days of incarceration amounted to a constitutional violation.

 To summarize, as of the time of Kelly's arrest, four circuits, in decisions

dating back to 1987, had validated Judge's Pollack's earlier interpretation of the Constitution,[6] and the defense has cited no circuit precedent to the contrary. Most significantly, all of these cases explicitly address *Baker v. McCollan* and reject the very argument advanced by Defendants here. Within the Third Circuit, decisions from other circuits are pertinent in resolving issues of qualified immunity. *See, e.g.,* *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) ("In reaching our result [denying a qualified immunity defense] we point out that other courts of appeals have made determinations consistent with ours."). At a minimum, they are relevant in determining what a reasonably trained police officer should know, and whether there is truly ambiguity as to the meaning of *Baker.*

In this case, the length of Plaintiff's incarceration—30 days—was ten times as long as that of the plaintiff in *Baker.* This is also the same length of time that Judge Pollack found constitutionally problematic in *Rodriguez*, and four times as long as the period the Seventh and Eleventh Circuits found problematic in *Patton* and *Cannon.* In addition, as in *Rodriguez, Gray, Cannon,* and *Lee*, Officer Jones had the ability to easily discover the error in identification by consulting information accessible to him like photographs and descriptions of the actual subject of the arrest warrant.

The defense contends that the controlling law had to have been unclear to Officer Jones, seizing upon this sentence in my earlier opinion: "For practical purposes,

gencies present in the field excuse the reasonable but mistaken arrest conducted by Officers John and S. Gretsky, but they were not present during the month that Plaintiff was detained by Officer Jones.

5. The Court ultimately found that the claim failed only because the plaintiff had not demonstrated that the sheriff named as a defendant in the case knew anything about the

delay in investigating, and he therefore could not be held liable. *Patton*, 822 F.2d at 701.

6. Courts have conceptualized the violation in different ways—differing mainly on whether the violation should be characterized as one of the Fourth amendment or the Fourteenth amendment—but they have uniformly found that such detention was unlawful.

the question is how far to extend the protections of *Baker*." However, this confuses syntax with substance. Making such an inquiry does not indicate that the question remained unanswered, and therefore the scope of Plaintiff's right was not "clearly established" at the time. Rather, the Court must engage in such an analysis to determine whether a reasonably well-trained officer "apply[ing] general legal principles" and "relat[ing] established law to analogous factual settings" would know that his conduct was prohibited. *People of Three Mile Island*, 747 F.2d at 144. By my reading of the Constitution, the right of an innocent citizen to be free from unlawful seizure is patent. *Baker* is a narrow defense for officers who initially arrest and detain a person in reliance upon a facially valid warrant. However, as set forth in the original opinion, one cannot compare the situation faced by out-of-county officers acting in reliance on an apparently valid warrant in *Baker* (who **did** in fact later investigate) with the conduct of Officer Jones, whose affidavit of probable cause instigated Kelly's arrest, who was according to the complaint told of the mistaken arrest, and had at his immediate disposal the means to determine the legitimacy of the arrest. Officer Jones should have therefore recognized that his actions were not excused by *Baker*.

## IV. Plaintiff has stated a viable claim against the City of Chester.

My original order indicated that Plaintiff sufficiently stated a § 1983 *Monell* claim against the City of Chester for failure to properly train and supervise officers, at least pertaining to policies and customs relevant to the malicious prosecution claim. Defendants argued that since Plaintiff's *Monell* claim is predicated on the City of Chester's alleged unconstitutional policy in failing to train, supervise, or discipline Officer Jones, the *Monell* claim should be

dismissed if the claims against Officer Jones were dismissed. Since the claim against Officer Jones will be permitted to proceed, the claim against the City of Chester will accordingly be permitted. Therefore, my original order as to the City of Chester Defendant is reinstated.