Wayde **TRENT**, Plaintiff

v.

William **HUFF**, et al., Defendants

**CIVIL ACTION NO. 14-241-DLB-HAI**

United States District Court,
E.D. Kentucky,
**Southern Division.**
at **London.**

Signed April 15, 2016

See also 2015 WL 4875330.

Kevin Wayne Johnson, Law Office of Kevin W. Johnson, Matthew Lawton Bowling, Hazard, KY, for Plaintiff.

Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, KY, for Defendants.

### *MEMORANDUM ORDER*

David L. Bunning, United States District Judge

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 35). This Motion was filed on November 10, 2015, and the time in which Plaintiff could file a response has long-since expired. Accordingly, this matter is ripe for the Court's review. Having con-

sidered the Motion, and being otherwise sufficiently advised, the Court will grant Defendants' Motion on all federal claims against all Defendants, and dismiss any remaining state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### I. Factual and Procedural Background

Wayde J. Trent was arrested on December 12, 2013 pursuant to a warrant for trafficking in a controlled substance. He was detained for a approximately two hours, and then released on bond. (Doc. # 34 at 27).[1] After failing a series of drug tests that indicated he had been using marijuana after his arrest, in violation of his bond conditions, Trent was again detained. (Doc. # 34 at 28–29). This time, he would stay in jail twenty-one days before being released. (Doc. # 34 at 29).

This release was Trent's final one in this matter. A case of mistaken identity had resulted in Wayde Trent being arrested instead of the intended target—Wade Allen Trent, Plaintiff's cousin. While the warrant contained Wade Allen Trent's address, it contained only the name "Wade Trent." (Doc. # 34–1 at 17). Further, the warrant included Wayde J. Trent's social security number and birth date. (Doc. # 34 at 17–18). It unknown how Plaintiff's personal information was mistakenly printed on the warrant. After twenty-one days in jail, Officer John Couch was able to clarify with an informant that the wrong Mr. Trent had been arrested, and presented this information to a judge so that Plaintiff could be released. (Doc. # 35–2).

After this ordeal, Plaintiff filed suit in Perry County Circuit Court, but Defendants removed this case to federal court pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1331. (Doc. # 1). Several Defendants were dismissed by the Court's

---

**1.** Doc. # 34 is the Plaintiff's deposition which has been filed in the record.

prior Order. (Doc. # 31). For the reasons stated herein, the remaining Defendants should be dismissed as well.

## II. Analysis

### A. *Standard of Review*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

■ Where, as here, a motion for summary judgment is unopposed, the Court may not simply grant the motion because it is unopposed. This is so because "a party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir.2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir.1979)). The Court must, at a minimum, review the record and consider supporting evidence therein in order to determine whether the movant has discharged its burden. *Byrne v. CSX Transp., Inc.*, 541 Fed.Appx. 672, 675 (6th Cir.2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 Fed.Appx. 374, 380–81 (6th Cir.2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure he has discharged that burden.").

Accordingly, the Court will review the record and the law governing this matter to determine if a genuine issue of material fact is present. Stated another way, if the Court finds facts that would permit a reasonable jury to find for the non-movant, Defendants' Motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.*

■ Plaintiff raises federal claims pursuant to 42 U.S.C. § 1983 in Counts One, Five, and Seven of his Complaint. (See Doc. # 1–1 at 4–7). Section 1983, Title 42, United States Code aims to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992); *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (stating that the statute "is not itself a source of substantive rights, but merely provides a method or vindicating federal rights elsewhere conferred"). It provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To prevail on a § 1983 claim, a plaintiff must generally demonstrate that: (1) he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir.2003).

Plaintiff alleges that he was "unlawfully arrested and was continually detained and confined in violation of 42 U.S.C. § 1983" by William Huff, John Couch, Tim Kilburn, and the Kentucky River Regional Jail Authority.[2] (Doc. # 1-1). However, as will be demonstrated below, each claim against each defendant fails because of a lack of a constitutional violation, or alternatively, due to the shield of qualified immunity.[3]

### 1. Unlawful arrest claims are barred by facially valid warrant.

■■■ Based on Plaintiff's Complaint, he seems to allege a claim for unlawful arrest. However, it is well-established in the Sixth Circuit that a facially valid warrant is a complete defense to a federal constitutional claim for false arrest and false imprisonment. *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143–44, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The only exception to this rule is for defendants who intentionally mislead or intentionally omit material information from arrest warrants. *Id.*; *see also Sykes v. Anderson*, 625 F.3d 294, 312 (6th Cir.2010) (holding that "police officers cannot, in good faith, rely on judicial determination of probable cause to absolve them of liability when that determination was premised on an officer's own material misrepresentations to the court").

Plaintiff has not alleged that any official intentionally misrepresented or omitted information when preparing the warrant that led to his arrest, nor has he presented

2. Kentucky River Regional Jail Authority ("KRRJA") is an inter-government agency created by Knott and Perry Counties pursuant to KRS § 441.800. Section 441.800 permits two or more counties to establish a regional jail authority as a "public body corporate and politic." Subpart (2)(a) of § 441.800 lists among the body's powers the ability to "sue and be sued." There is scant case law on what this provision means for the purposes of § 1983 suits, and it is unclear whether a plaintiff should sue the regional jail authority directly or file suit against the counties that comprise it. This latter option is how sheriff's departments and other arms of Kentucky counties have been sued traditionally under federal law. *See Barnett v. Louisville Metro Police Dep't*, No. 3:13–CV–00032–CRS–DW, 2014 WL 200470, at * 9 (W.D.Ky. January 17, 2014) (noting that municipal police departments are not capable of suit under § 1983; the county itself must be sued instead) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994)). Here, while the Court believes that Kentucky Regional Jail Authorities could be sued directly since the enabling statute notes that the resulting entity is a "body politic," the issue need not be resolved because

there is no underlying constitutional violation upon which to premise municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that § 1983 permits suit of natural persons acting under color of state law as well as municipal corporations and other bodies politic); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (holding that where there is no constitutional injury, there can be no liability against the government body for its policies or customs) (per curiam).

3. To be shielded by qualified immunity, a necessary prerequisite is that the official be acting under color of state law. Here, it is undisputed that all remaining Defendants are state actors. William Huff is the bailiff who took Plaintiff into custody and also a Perry County Deputy Sheriff; John Couch is the officer who testified before the grand jury that returned the indictment against Plaintiff, and Couch is the officer who appeared before Judge Engle to secure Plaintiff's release once it was determined that there had been a mistake; Tim Kilburn is an administrator at KRRJA. (*See* Doc. # 1-1).

any evidence to support such a position. Accordingly, to the extent Plaintiff's Complaint can be read to allege a federal constitutional violation for unlawful arrest, those claims fail for wont of a genuine issue of material fact. Stated differently, due to the presence of the facially valid warrant and the absence of any evidence of misrepresentations or omissions by any of the Defendants, a reasonable jury could not find for Plaintiff on his unlawful arrest claims.

### 2. Plaintiff's § 1983 claims for due process violations fail for lack of a constitutional violation.

■ Plaintiff also alleges § 1983 claims for violations of his due process rights due to his continued detention after he claimed mistaken identity. These claims are not premised on a Fourth Amendment violation, and instead seem to fall under the Fourteenth Amendment generally.

Alleged unlawful detentions based on mistaken identity have been most notably addressed by *Baker v. McCollan*, 443 U.S. at 143–44, 99 S.Ct. 2689. In *Baker*, the plaintiff's brother used the plaintiff's driver's license—altered to change the picture to that of the brother—when he was arrested on narcotics charges. *Id.* at 137, 99 S.Ct. 2689. Use of this fake identification ultimately led to the plaintiff being detained on an arrest warrant intended for his brother. *Id.* The Supreme Court held that the plaintiff's three-day detention did not violate his federal constitutional rights. *Id.* at 144–45, 99 S.Ct. 2689. The Court held that, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.* at 145, 99 S.Ct. 2689.

But the Supreme Court went on to say that someone in the plaintiff's position "could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Id.* at 144, 99 S.Ct. 2689. The Sixth Circuit subsequently has addressed this language from *Baker*, and the resulting cases create a loose spectrum on which to judge mistaken identity detentions.

In *Gray v. Cuyahoga County Sheriff's Department*, the Sixth Circuit found that a genuine issue of material fact existed about whether a plaintiff's federal constitutional rights were violated where he was imprisoned for forty-one days and where there was a "vast discrepancy" between the photograph and description contained in the warrant and the appearance of the person actually arrested and detained. 150 F.3d 579, 581 (6th Cir.1998). The court in *Gray* relied on two district court cases that found potential constitutional violations for mistaken identity incarcerations, and distinguished *Baker* based on the length of the detention (thirty and twelve days compared to three in *Baker*) and on the ease with which the matter could have been addressed (the arrestees did not match the photographs in the warrants). *Id.* at 582–83; *see also Rodriguez v. Roth*, 516 F.Supp. 410, 412 (E.D.Pa. 1981); *Andujar v. City of Boston*, 760 F.Supp. 238, 241 (D.Mass.1991). More recently, in *Flemister v. City of Detroit*, the Sixth Circuit held that a detention of four-and-a-half days was insufficient to support a constitutional claim, despite the plaintiff's repeated protestations of mistaken identity and despite the ready availability of photographic and fingerprint identifiers that would have cleared up any confusion. 358 Fed.Appx. 616, 620–21 (6th Cir.2009).

Thus, viewing the cases from the Sixth Circuit on a spectrum, this case appears, at least at first blush, to fall in a gray area in between *Flemister and Gray*. Plaintiff was held for a total of twenty-one days,

which is more than *Flemister* but less than *Gray*. Plaintiff's case, however, presents an additional wrinkle. Plaintiff, by this own admission, was initially held for only two hours and then released on bond. As part of his bond conditions, Plaintiff was prohibited from using illegal drugs. After at least two tests showed increasing levels of illegal substance use, Plaintiff's bond was revoked.

This fact distinguishes this case from the others referenced above. It is disputed, or at least very unclear, whom Plaintiff told about the mistaken identity resulting in his arrest. But it is undisputed that he was released on bond within two hours of being arrested. This is much shorter than the time in *Flemister* or *Baker*, and certainly so brief as to not be a deprivation of any constitutionally protected rights. It was only after Plaintiff violated the conditions of his bond that his detention reached constitutionally questionable levels.

■ Officials are under no duty to investigate every claim of innocence. *Baker*, 443 U.S. at 145–46, 99 S.Ct. 2689. While the case law makes clear that officials should take some reasonable steps to investigate repeated claims of mistaken identity—especially where a cursory examination of the facts could unveil such a mistake—Defendants in this matter ultimately did uncover the mistake and worked diligently to correct it. (Doc. # 35–2).

Perhaps most importantly, Plaintiff's bond violations operate as separate crimes in Kentucky, giving officials probable cause to arrest him notwithstanding the mistaken identity in this matter. Plaintiff's bond conditions, which he signed, stated that:

Violation of Conditions and/or Failure to Appear:

If you willfully fail to appear, fail to comply with the conditions of your re-

lease, or otherwise fail to render yourself amenable to the orders and processes of the courts, the court may issue a warrant for your arrest and may order forfeiture of the bond, and you shall be subject to prosecution for bail jumping per KRS 520.070 and KRS 520.080. You may be subject to contempt of court per KRS 432.280.

(Doc. # 34–1 at 11). Thus, by violating his bond conditions by failing his third drug test, Plaintiff created new probable cause for his re-arrest and detention.

It is undisputed that law-enforcement officials made a mistake in this matter. But Plaintiff compounded that mistake by making some of his own. The Court finds no constitutional violation where the initial detention pursuant to the mistaken identity was for only two hours. And while it is true that Plaintiff should have never been subject to the bond condition that he violated, his violation of that bond condition would have cast doubt on his pleas of innocence based on mistaken identity, and provided separate probable cause for his re-arrest and detention. Simply put, Plaintiff here was given due process, but failed to take advantage of it by repeatedly violating his bond conditions.

### 3. Alternatively, Defendants are protected by qualified immunity.

■ Even if Plaintiff did have a constitutional right not to be mistakenly detained after being initially released and then re-arrested for violating a bond condition, all Defendants here are shielded by qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate the clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d

565 (2009) (internal quotations omitted). Courts utilize a two-part test to determine whether a government official is entitled to qualified immunity. *Id.* at 236, 129 S.Ct. 808. The prongs may be analyzed in any order. *Id.* The first part of the test—the existence of a constitutional violation—has been addressed above and answered in the negative. However, Defendants are entitled to qualified immunity even if this analysis is wrong, so long as the second prong—that the right violated was not clearly established at the time of the violation—is absent. *Id.* at 236–38, 129 S.Ct. 808.

 This second prong "requires the court[ ] to examine the asserted right at a relatively high level of specificity, and on a fact-specific, case-by-case basis." *Bletz v. Gribble,* 641 F.3d 743, 750 (6th Cir.2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously be held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

This case, which falls somewhere in between *Gray* and *Flemister* on the mistaken-identity-detention spectrum, is not one in which a reasonable official would know that he is violating a constitutional right. Because it is unclear whether this detention was long enough to violate a constitutional right, and regardless of whether the relevant period of detention is two hours or twenty-one days, a reasonable official would not have known what he was doing violated Plaintiff's rights.

Plaintiff's decision to violate his bond further muddies the constitutional waters. The bond violation operates as a second, independent reason to arrest and detain Plaintiff. By continuing to use illegal drugs after he was released, he violated a direct order from the state court. The bond violation acted as additional probable cause for his re-arrest and detention. The Court has been unable to find any pre-existing law from the Supreme Court, the Sixth Circuit, the other circuits, or from this Court that would support a finding that the officials here knew or should have known that they were violating Plaintiff's constitutional rights by detaining him for twenty-one days after he violated his release conditions.[4] Accordingly, all remaining Defendants are entitled to qualified immunity for all federal constitutional claims in this matter.

### C. *Plaintiff's state-law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).*

 This matter was originally filed in Kentucky state court. Defendants re-

---

[4] The Court recognizes that in malicious prosecution cases, which Plaintiff has not alleged, the continued-seizure doctrine may find bond conditions to be deprivations of liberty. *See Johnson v. Moseley,* 790 F.3d 649, 654 (6th Cir.2015) (holding that the conditions of release were sufficient to constitute a deprivation of liberty in the malicious prosecution analysis). *Moseley* sights to *Johnson v. City of Cincinnati* for the proposition that bond conditions satisfy the continuing seizure doctrine; however, Johnson explicitly holds that it is not deciding that issue. *See Johnson v. City of Cincinnati,* 310 F.3d 484, 492–93 (6th Cir. 2002) (noting that the continuing seizure doctrine for bond conditions had not yet been recognized in the Sixth Circuit, and holding that the issue need not be resolved at that time). In any event, this is not a malicious prosecution case, and this murkiness in the law in that area does not operate to put Defendants on notice of a potential constitutional violation in a separate area of the law.

moved pursuant to 28 U.S.C. §§ 1446 and 1331 due to the presence of federal questions. Plaintiff's Complaint presented three federal questions and the remaining claims presented state-law issues, which the Court took jurisdiction over pursuant to its pendent jurisdiction. (Doc. # 1–1). Section 1367(c)(3) of Title Twenty–Eight of the United States Code provides that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." The Court lacks original jurisdiction over these claims due to the absence of a federal question and of complete diversity (all parties are residents of Kentucky). Accordingly, now that the federal question claims have been dismissed, the Court may dismiss the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). The Court dismisses the remaining state-law claims in this matter without prejudice because those claims are properly and best reserved to the sound discretion of the Kentucky state courts.

## III. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment (Doc. # 35) is **granted**;

(2) Plaintiff's § 1983 claims (Counts 1, 5, and 7) are hereby **dismissed with prejudice**;

(3) All of Plaintiff's remaining Kentucky state law claims are **dismissed without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); and

(4) This matter is hereby **stricken** from Court's active docket.